UNITED STATES of America, ex rel. Frank SMITH

v.

Joseph R. BRIERLY, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania 19130, Commonwealth of Pennsylvania, Appellant.

No. 16652.

United States Court of Appeals Third Circuit.

Argued Sept. 28, 1967.

Decided Nov. 9, 1967.

Benjamin H. Levintow, Asst. Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., on the brief), for appellant.

Robert J. Sugarman, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This is an appeal by the Commonwealth of Pennsylvania from a judgment of a district court granting habeas corpus to Frank Smith, a prisoner confined pursuant to a state conviction of felony murder, without prejudice to the right of the state to retry him.

At Smith's trial it was shown and not denied that he and two confederates, who were tried separately, had committed an armed robbery of a taproom in the course of which they herded the patrons down steps into a cellar. There it was discovered that one of the patrons was bleeding from head injuries, which allegedly led to his death and to the indictment of the robbers for felony murder.

It was the state's contention that the decedent's fatal injury had been caused by a blow on the head struck by Smith with a pistol butt. At the trial no one testified that he had seen Smith or anyone else strike the deceased, and Smith denied that he had done so. The state's evidence on this point consisted of police

testimony disclosing so-called "tacit admissions" by Smith in failing to deny accusations made against him by his confederates while all of them were prisoners under interrogation.

A fair statement of a principal episode which the trial court permitted a detective to recount to the jury as disclosing a "tacit admission" by Smith, appears in the following excerpt from the opinion of the district court:

"The police were allowed to relate on the witness stand what relator's accomplices had said in his presence and his reaction upon hearing these supposed accusations. * * * To the oral statements [that relator had struck the decedent] they said he clenched his lips and shook his head. Was this a flat denial? A sign of determination to say nothing until he received the assistance of counsel? The sign of disgust at his accomplices' mendacity? Or was it, as the trial judge promptly characterized the movement, an indication of 'consternation'? We hold that under circumstances such as these, any attempt to verbalize relator's virtual inaction cannot, as a matter of due process, be condoned."

We agree with the district court that the use of such an episode as an admission by the accused of a fact vital to the proof of a capital offense cannot be squared with the requirement of the Fourteenth Amendment that criminal procedure be fundamentally fair. We have pointed out that the episode occurred while the accused was in custody and under police interrogation on a capital charge. If his choice was to remain silent, he could not constitutionally be forced to speak. This has been settled law for thirty years. Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682. A "confession by which life becomes forfeit must be the expression of free choice." Watts v. State of Indiana, 1949, 338 U.S. 49, 53, 69 S.Ct. 1347, 1350, 93 L.Ed. 1801. Here, the accused was accorded no more than Hobson's choice, since an application of the state's legal rule of "tacit admission"

made the prisoner's exercise of his constitutionally protected right to refuse to respond to police interrogation, evidence of guilt. As one circuit court of appeals put the matter nearly forty years ago:

" * * * after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; and the customary formula of warning should be changed, and the respondent should be told, 'If you say anything, it will be used against you; if you do not say anything, that will be used against you.' " McCarthy v. United States, 6th Cir., 1928, 25 F.2d 298, 299.

Similarly, the court below aptly observed that, "To conclude that the absence of a verbal response can be used to incriminate an accused when it is clear that there was no desire to concede anything is to sanction the use of a confession which is rendered involuntary by the very principle of state law which makes it admissible."

Moreover, in our view what happened in this case was even more unfair than treating the silence of a prisoner under interrogation as a guilty admission. The witness for the prosecution who testified to the incident in question, stated that the prisoner did respond to the accusation by lowering his head and shaking it from side to side. Such a gesture is normally interpreted as a denial. Yet, in the colloquy over the admissibility of this episode as evidence of guilt, the trial court, in the presence of the jury, characterized the action of the accused in shaking his head as a show of "consternation". Thus, the jury was invited to adopt a possible, but certainly unusual, interpretation of the gesture which made a head shaking even more indicative of guilt than simple silence would have been.

Indeed, the trial judge went even further in submitting the case to the jury and charged that it "would be a miscarriage of justice" and "not at all in accord with the admitted circumstances in the situation" to return anything but a verdict of first degree murder.

All of these circumstances considered, we are satisfied that in this case the device of proof by "tacit admission" was employed in a way that was essentially unfair to the accused and, therefore, violative of the Fourteenth Amendment.

In this view of the matter, we find it unnecessary to consider the state's contention that the Supreme Court's recent ruling that the Fifth Amendment privilege against self-incrimination is incorporated in the Fourteenth Amendment, Malloy v. Hogan, 1964, 378 U.S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653, should not be given retrospective effect. For our decision that the procedure in this case was fundamentally unfair does not presuppose or depend upon any such incorporation.

The judgment will be affirmed.