UNITED STATES of America,
Plaintiff-Appellee,

v.

John BRINSON, Defendant-Appellant.

No. 18932.

United States Court of Appeals
Sixth Circuit.

June 13, 1969.

Allen N. Brunwasser, Pittsburgh, Pa., on brief, for appellant.

Robert J. Grace, U. S. Atty., Franklin G. Koory, Asst. U. S. Atty., Detroit, Mich., on brief, for appellee.

Before PHILLIPS, McCREE and COMBS, Circuit Judges.

McCREE, Circuit Judge.

Appellant was convicted of transporting in interstate commerce money of the value of $5,000[1] knowing the same to have been taken by fraud. His appeal presents three issues. First, he contends it was plain error to permit the United States Attorney to inquire in the presence of the jury whether appellant had previously disclosed his trial-asserted defense to any prosecuting agent or law enforcement officers. He also claims that error was committed when the District Judge refused to enforce a subpoena to compel the attendance of a defense witness. Finally, he asserts that it was error for the trial prosecutor and judge to vouch for the credit of a witness for the Government. We reverse on the first ground.

Appellant and his co-defendant, Helen Rucker, were accused of fraudulently obtaining $5,000 from a Mrs. Lee and transporting it from Flint, Michigan to Pittsburgh, Pennsylvania. Defendant, who took the stand, admitted the fraudulent procurement of the $5,000 but testified that a division of the spoils took place in Michigan prior to his departure from that state and that he therefore did not transport in interstate commerce an amount of money sufficient to make his offense a federal crime. Helen Rucker, who had previously pleaded guilty, contradicted this testimony.

The testimony relevant to the first issue on appeal is as follows:

A. I never have believed as a matter of law or fact that I am guilty of this charge, of transporting $5,000 across the state line.

Q. What I am getting at is if your testimony here today is true you wouldn't be guilty of this charge.

A. I am not guilty of this charge.

Q. Since the time you were arrested have you ever had occasion to give your version of this story to any law-enforcement agent or FBI agent?

A. No one has approached me.

Q. But you did have contact with the FBI agent at least twice, is that true?

A. You mean contact by coming to get me out of jail?

Q. Yes.

A. Yes.

Q. Did you ever attempt to tell that agent or the agent that arrested you your version of the story?

A. Mr. Hamel [United States Attorney] nobody—

Q. (Interposing) That can be answered yes or no.

A. These are the people that I tell my story to, not the FBI agent.

---

1. 18 U.S.C. § 2314 provides in part:
    Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(179) THE COURT: Just answer the question.

A. I don't know what he is trying to say.

THE COURT: It's a simple question. His question is did you tell this story to any FBI agent?

A. That I am telling now?

THE COURT: Yes.

A. No.

MR. HAMEL: No further questions.

*    *    *    *    *    *

THE COURT: Mr. Hamel asked you a question about what, if anything, you had to say to the FBI agent either (185) at your arrest or thereafter. Did you tell them anything about what you claim happened in this case?

A. I said nothing to the FBI.

THE COURT: They gave you an opportunity to, didn't they?

A. What do you mean "opportunity"?

THE COURT: They were interested in what your story was?

A. They never asked me anything about it because the agent that arrested me told the U. S. Commissioner in Pittsburgh, "We don't know anything about it." No one ever asked me, "Did you do it or didn't you do it," and I never volunteered one way or another. I never said anything.

THE COURT: When was the first time that you told your side of the story to anybody in law enforcement or your own attorney, the story you have told here?

A. When I first, probably the second time when I first met my attorney.

THE COURT: About when was that?

A. Let's see, sometime possibly in May.

THE COURT: Of this year?

A. Yes. That is when I told my attorney this story.

THE COURT: Did you tell anybody else?

A. Of course.

(186) THE COURT: Well, I mean anybody connected with this case.

A. There was no one I have ever been contacted by I could have told except my attorney since that time.

Emphasis was afforded this line of interrogation by the United States Attorney in his argument at the conclusion of the proofs:

I want to cover just two other things that you should consider when you determine whether Mr. Brinson is telling the truth about what happened after they left Flint. One is his statement that, well, what he testified to was true, he never found it appropriate to mention it to any law enforcement officer or FBI agent. Surely Mr. Brinson doesn't think that the Government is interested in prosecuting innocent people and if he had an explanation he might have well considered it appropriate to an earlier time to mention it. He did not, but which is his right but I think it is a circumstance you can take into consideration along with the other proofs in this case.

■ Appellant did not object to the interrogation or to this argument, but, we may consider this issue if it is plain error affecting a substantial right. Fed. R.Crim.P. 52(b).

In Miranda v. Arizona, 284 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated:

"The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. (id. at 469, 86 S.Ct. at 1625.)

*    *    *    *    *    *

" * * * it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (id. at 468, 86 S.Ct. at 1625, n. 37).

██ Subsequent decisions have held that a failure to deny accusations while the defendant is in custody cannot be referred to in evidence as a tacit admission. United States ex rel. Smith v. Brierly, 384 F.2d 992 (3rd Cir. 1967); United States v. McKinney, 379 F.2d 259 (6th Cir. 1967). In *McKinney* we quoted with approval the following quotation from McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928):

This was error. Where accusatory statements are made in the presence of a respondent and not denied, the question whether his silence has any incriminating effect depends upon whether he was under any duty or any natural impulse to speak. Sometimes or often, in the earlier stages of the matter, there may be such a duty or impulse; but, after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; and the customary formula of warning should be changed, and the respondent should be told, "If you say anything, it will be used against you; if you do not say anything, that will be used against you." 25 F.2d at 299.

██ Brinson's silence was not offered in evidence as a tacit admission in response to an accusatory statement. Nevertheless, he had the same right to remain silent following his arrest as did the defendants in the previously cited cases. Since he had no duty to disclose his defense to any law enforcement officer or prosecuting authority, permitting the inquiry pursued at trial by the United States Attorney was error of constitutional magnitude, which the trial judge unfortunately emphasized by his participation in the examination of appellant.

Appellant's second contention concerns the District Judge's refusal to enforce a subpoena served after the conclusion of the first day of trial to compel the attendance in Flint, Michigan of a witness from the Detroit area. It is not altogether clear from the record whether the judge refused enforcement because it would have required an inconvenient continuance (as appellant contends) or because he regarded the testimony to be elicited from the subpoenaed witness as collateral (as appellee claims). In any event, since a new trial will be required, we will not decide this issue because defense counsel, now being advised of the Government's case, will have ample time before trial within which to serve the subpoena.

Appellant is obviously mistaken about his third issue because he erroneously attributes to the District Judge statements which were in fact those of the United States Attorney.

Reversed and remanded for a New Trial.