James A. HAYTON, Petitioner-Appellant,

v.

Charles EGELER, Warden State Prison of Southern Michigan, Respondent-Appellee.

No. 76–2020.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1976.

Decided May 31, 1977.

Rehearing and Rehearing En Banc Denied July 14, 1977.

William T. Street, Legal Services of Eastern Michigan, Saginaw, Mich. (Court-appointed CJA), James Edward Hayton, Prisoner, Stuart M. Israel, Ohio State University, College of Law Clinical Programs, Columbus, Ohio, for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, Robert A. Derengoski, Thomas L. Casey, Lansing, Mich., for respondent-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PECK, Circuit Judge, delivered the opinion of the Court, in which PHILLIPS, Chief Judge, joined. EDWARDS, Circuit Judge, (p. 605) filed a separate dissenting opinion.

JOHN W. PECK, Circuit Judge.

Appellant was convicted by a jury of first degree murder in the Livingston County, Michigan, Circuit Court on June 26, 1968, and was sentenced to serve a term of life imprisonment. After exhausting his state remedies, appellant filed a petition for writ of habeas corpus in the district court. Counsel was appointed, an amended petition was filed, and a hearing was held. The district court then granted appellee's motion to dismiss, denied the petition, and dismissed the action. Appellant has appealed the district court's judgment on the ground that his Fourteenth Amendment rights were violated at the state court trial when he was cross-examined regarding his silence, while in pretrial custody, about his alibi defense and when the prosecutor engaged in allegedly improper conduct. We affirm the district court's judgment.

I

The crime for which appellant has been imprisoned occurred at approximately 8:00 p. m. on January 7, 1967. Two men entered a pharmacy in Hamburg, Michigan, where the owner, George Reck, Sr., and his twenty year old son, George Reck, Jr., were at work. The two men approached the prescription counter, where the Recks were located, and one of the men asked for stomach medication. The father left the counter with that man to find the medication, while the other man, identified in court as appellant, stayed close to the son. The man identified as appellant then told the son not to make any noise because his partner had a

gun on the owner. The assailants forced the Recks to lie face down behind the prescription counter and then shot them in the back. The father was killed, and the son was seriously wounded.

Although wounded, the son was able to get up and go towards the front of the store where he saw the man identified as appellant running out the front door and the other man already in a light colored Rambler station wagon. While getting into the car, the man identified as appellant saw the wounded George Reck, Jr. observing him and so, carrying a gun, he got out of the car and started back into the store. Reck, Jr. ran to the rear inside the store to the back door. There he turned and saw the man identified as appellant pointing a gun at him and firing. The son, however, made good his escape out the back door and obtained help from a nearby restaurant. The two assailants fled the scene in the Rambler. About $100 were taken in the robbery.

The Michigan State Police investigated the robbery-murder. Over the course of the next several months, George Reck, Jr. was shown more than 4,000 photographs and at least 20 individuals in an effort to identify the two assailants. In August, 1967, the photographs of men involved in an unsuccessful armed robbery in Southfield, Michigan, were shown to Reck, Jr. Included in those apprehended in that robbery attempt was the appellant. From a photograph, Reck, Jr. immediately identified appellant as one of the assailants. The same day, a line-up of eight people was held in the Oakland County, Michigan, jail, where appellant was being held for the Southfield robbery attempt. At the line-up, Reck, Jr. again identified appellant as one of the assailants. Subsequently, an arrest warrant was executed on appellant for the Hamburg murder.

Appellant was tried jointly with one Paul Willard Coleman for the murder at the Hamburg pharmacy. George Reck, Jr. made positive in-court identifications of appellant and Coleman as the two assailants. Appellant presented an alibi defense. Ap-

pellant's two sisters testified that on the night of January 7, 1967, appellant was with his three children at the home of one of the sisters. Appellant corroborated this testimony. Co-defendant Coleman also presented an alibi defense.

When appellant was on the stand, the prosecutor cross-examined him as to the time when appellant remembered where he was on the night of the murder. The prosecutor asked a single question as to whether appellant had disclosed the details of his alibi defense to the police officer in charge of the investigation when the officer and appellant had ridden together in a car during the period of appellant's pre-trial custody. Appellant said that he did not.

During the course of the trial, co-defendant Coleman's counsel characterized the robbery at the pharmacy as a "bungled" job. The prosecutor in turn made the point that appellant was a "bungler."

The jury found appellant guilty of first degree murder. Co-defendant Coleman was acquitted.

## II

■ The district court held that there was no constitutional error committed at the state court trial in admitting the evidence that appellant did not tell the Michigan State Police about his alibi before trial. According to the district court, the appropriate approach to apply in cases of post-arrest silence was to "make an inquiry in each case whether the silence is in fact inconsistent with the trial testimony and then balance the probative value of the evidence on the issue of credibility against its potential prejudicial effect." *Hayton v. Egeler,* 405 F.Supp. 1133, 1149 (E.D.Mich.1975). The district court determined that the silence in the present case would not by itself be clearly impeaching but concluded that the evidence was admissible because appellant's pretrial silence about the alibi was inconsistent with the fact that appellant talked freely at the time with the Michigan State Police. *Hayton v. Egeler, supra,* 405 F.Supp. at 1149–50.

We cannot accept this basis for admitting the evidence of the post-arrest silence. The district court's finding of fact that appellant talked freely to the Michigan State Police was clearly erroneous. The record does not offer any support for that finding. The state court trial transcript shows only two references, made in passing by appellant's trial counsel, that could even suggest that appellant was talking to the police. More importantly, there is nothing at all in the record about the substance of any conversation between the Michigan State Police and appellant, and hence there is not sufficient information to conclude that appellant said anything which would be inconsistent with silence concerning an alibi.

Appellant contends that his constitutional rights to due process of law and against self-incrimination were violated when the prosecutor cross-examined appellant as to whether he had told the Michigan State Police about his alibi before trial. Appellant relies especially on *Doyle v. Ohio* and *Wood v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1198 (1976), and *United States v. Brinson,* 411 F.2d 1057 (6th Cir. 1969), for authority that the prosecutor's effort to impeach appellant's alibi testimony by inquiring about his post-arrest silence was constitutionally impermissible.

The Supreme Court in *Doyle v. Ohio, supra,* reversed the state narcotics convictions of two defendants, who at trial presented alibi defenses about which they were silent at the time of arrest. The Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619, 96 S.Ct. at 2245. This decision was based on the ground that silence, as to an alibi, at the time of arrest was "insolubly ambiguous because of what the State is required to advise the person arrested." 426 U.S. at 613, 96 S.Ct. at 2244. The Court determined that implicit in the warning, required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that a person has a right to remain silent in a custodial interrogation was the assurance that such silence would carry no penalty.

*Doyle v. Ohio, supra,* however, does not mandate reversal of the district court.[1] The Supreme Court did not reach the question before this Court in the present case, namely, whether the use, for impeachment purposes, of a petitioner's silence during the post-arrest and pretrial period violated due process guarantees. The Supreme Court explicitly stated in *Doyle, supra,* 426 U.S. at 616, n. 6, 96 S.Ct. at 2244 n. 6, that it was not dealing with that question because "different considerations" were involved than those in the *Doyle* situation.

Moreover, *Doyle* does not stand for the proposition that the exercise of the constitutional privilege to remain silent can never be used for discrediting a witness.[2] *Doyle* did not overrule *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), which allowed impeachment on the basis of a defendant's exercise of a constitutional right to remain silent. The Supreme Court in *United States v. Hale,* 422 U.S. 171, 175, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975), discussed the situation in *Raffel* in the process of distinguishing it.

1. The Supreme Court in *Doyle v. Ohio* and *Wood v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 2245 n. 11, 49 L.Ed.2d 91 (1976), recognized that its rule against use, for impeachment purposes, of a defendant's silence at time of arrest does not apply when the silence is to be used for rebuttal purposes, such as when a defendant presents an alibi and claims to have told the police the same version upon arrest. The present case, however, does not present a situation in which the pretrial silence was used for rebuttal purposes.

2. The position of Justice Douglas in *United States v. Hale,* 422 U.S. 171, 182, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (1975) (Douglas, J., concurring), and in *Grunewald v. United States,* 353 U.S. 391, 425, 77 S.Ct. 963, 1 L.Ed. 931 (1957) (Douglas, J., concurring), was that there were "no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it." The Supreme Court in those two cases and in *Doyle* did not adopt that broad ground for its decision.

There, a second trial was required when the first jury failed to reach a verdict. In reliance on his privilege against compulsory self-incrimination, the accused declined to testify at his first trial. At the second trial, however, he took the stand in an effort to refute the testimony of a government witness. Over objection, Raffel admitted that he had remained silent in the face of the same testimony at the earlier proceeding. Under these circumstances the Court concluded that Raffel's silence at the first trial was inconsistent with his testimony at the second, and that his silence could be used to impeach the credibility of his later representations.

The Supreme Court has not, however, extended *Raffel* when it has had the opportunity. In *United States v. Hale, supra,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99, the Court concluded that there was prejudicial error for the trial court to permit cross-examination of the defendant concerning his silence during interrogation immediately after arrest and that the defendant was entitled to a new trial in the exercise of the Court's supervisory authority over the lower federal courts. Also, in the exercise of supervisory powers, the Court in *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), found reversible error because the defendant had been cross-examined at trial about declining to answer a series of questions posed to him at the grand jury hearing preceding trial.

In absence of definitive Supreme Court guidance on the constitutional question before us, we will assume, for the purposes of this opinion, that constitutional error was committed. See *Minor v. Black, supra,* 527 F.2d 1 (cross-examination and prosecutor's arguments dealing with defendant's silence, between arrest and trial, about an alibi constitutional error in that case), and *United States v. Brinson, supra,* 411 F.2d 1057 (in direct criminal appeal, cross-examination and prosecutorial argument dealing with defendant's pretrial silence about exculpatory story constitutional error in that case). We conclude, however, that the error was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The issue is whether the testimony about the silence could have influenced the jury and contributed to the conviction, *Chapman v. California, supra,* 386 U.S. at 23–24, 87 S.Ct. 824, so that "absent the cross-examination . . . ., 'no juror could have entertained a reasonable doubt' as to petitioner's [appellant's] guilt." *Minor v. Black, supra,* 527 F.2d at 5. We are unable to resolve that issue in favor of appellant.

First, unlike the situation in *Minor,* the positive identification of appellant by George Reck, Jr. as a guilty party was indisputably strong. Before trial, Reck, Jr. had identified appellant immediately upon being shown his picture. Reck, Jr. identified appellant again at a line-up. At trial, Reck, Jr. identified appellant, and despite vigorous defense cross-examination, did not alter his testimony. Moreover, Reck, Jr. had a number of excellent opportunities on the night of January 7, 1967, to observe the person he identified as appellant. It was the man identified as appellant who had, at close range and in good light ordered appellant not to make any noise because his partner had a gun on his father. It was the man identified as appellant who fired a shot, after Reck, Jr. had a good look at him, before the latter escaped through the back door of the store.

Second, the testimony which appellant assigns as harmful is contained in a single one question and answer:

Q. On several occasions you had a chance to at least ride in a car with Mr. Demsky [Michigan State Police detective], didn't you?

A. Yes, sir, I did.

Q. He transported you to court and things like that?

A. Yes.

Q. *You ever tell him that you had been with your sister on January 7th, 1967, at the time this alleged offense happened?*

A. *I don't think so, no.* (Emphasis supplied.)

(State Court Trial Transcript p. 622). Unlike his counterpart in *Minor v. Black, supra,* 527 F.2d 1, the prosecutor here did not pursue this line of questioning, did not refer to it thereafter in any other question, or mention it in his final argument. The effect which appellant would assign to this single, almost casual reference is difficult to accept, particularly in view of the fact that this was a lengthy trial, lasting ten days.

Third, the difference in the guilty verdict as to appellant and the not guilty verdict as to co-defendant Coleman is understandable in view of the evidence and is further support for the conclusion that this isolated instance of cross-examination as to appellant's pretrial silence was harmless error. As indicated, Reck, Jr. had a good opportunity to observe the man identified as appellant the night of the murder. In contrast, he only glanced momentarily at the man identified as Coleman when that man first walked into the store, when he had a gun on his father, and when he was in the car escaping from the scene. A second element in the split verdict was that appellant's alibi was corroborated in testimony given by his sisters, whereas co-defendant Coleman's alibi was supported by testimony given by persons not shown by the record to have any interest in him. Finally, the evidence produced at trial showed that appellant had been in trouble with the law on other occasions, including an armed robbery attempt the year of the murder. Co-defendant Coleman was not shown to have been involved in crime at any other time.

### III

The district court also held that appellant's constitutional rights were not violated by claimed instances of prosecutorial misconduct. On appeal, appellant contends that his rights to due process of law and a fair trial were violated when the prosecutor referred to appellant as a "bungler" and in his final argument expressed his personal belief in the appellant's guilt.

The issue before us is whether the prosecutor's comments resulted in fundamental unfairness, not whether there was trial error. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Burks v. Egeler,* 512 F.2d 221 (6th Cir. 1975); *Gemmel v. Buchkoe,* 358 F.2d 338 (6th Cir. 1966). Under *Donnelly,* a determination on the question of fundamental unfairness is to be made after viewing the totality of the circumstances. This test "may serve to narrow the construction of the federal due process clause to some degree in considering prosecutorial abuse in argument," *Sheely v. Whealon,* 525 F.2d 713, 716 (6th Cir. 1975), but findings of lesser trial errors may suggest correction in the state and federal judicial systems, without rising to the level of constitutional deprivations. *Donnelly v. DeChristoforo, supra,* 416 U.S. at 647, 94 S.Ct. 1868; *Burks v. Egeler, supra,* 512 F.2d at 226. Similarly,

"[a]lthough matters involving the conduct of the trial can rise to the level of constitutional error, it is not often that they do so. A careful reading of the entire trial transcript in this case persuades the Court that the trial was fairly conducted and petitioner was competently represented. Further, the prosecution's conduct, although vigorous, was not unfair." *Hayton v. Egeler, supra,* 405 F.Supp. at 1152.

■ Using the *Donnelly* test, we are in agreement with the district court's conclusion that appellant was not deprived of a fundamentally fair trial. Moreover, *Donnelly* on its facts appears indistinguishable from the present case. In *Donnelly,* the allegations of prosecutorial misconduct involved the expression of a personal opinion by the prosecutor as to the defendant's guilt in response to a personalized argument by defense counsel and an ambiguous reference by the prosecutor indicating that the defendant had unsuccessfully sought to plead guilty to a lesser offense. The Supreme Court in *Donnelly* ruled that such prosecutorial conduct did not result in fundamental unfairness, since a conclusion of fundamental unfairness would have left "virtually meaningless the distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct held

in *Miller* [v. *Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967),] and *Brady* [v. *Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], . . . to amount to a denial of constitutional due process." *Donnelly v. DeChristoforo, supra,* 416 U.S. at 647–48, 94 S.Ct. at 1873.

The present case involves the same type of allegations of prosecutorial misconduct. Like *Donnelly,* there was an expression of a personal opinion by the prosecutor as to defendant's guilt in response to a personalized argument by defense counsel. Like the prosecutor in *Donnelly,* who made reference to an unsuccessful effort to plea-bargain in order to imply that the defendant in that case was connected to the crime, the prosecutor in the present case made reference to appellant as a "bungler," which could, but does not necessarily, imply that appellant was connected to a mishandled robbery resulting in murder. As in *Donnelly,* there was no fundamental unfairness in the present case.

The judgment of the district court is affirmed, and appellant's petition for writ of habeas corpus is denied.

EDWARDS, Circuit Judge, dissenting.

I agree with the majority opinion in all respects except as to the effect of the prosecutor's cross-examining of appellant concerning his post-arrest silence. As to it I feel that *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1198 (1976), require us to hold (rather than assume) that appellant's constitutional rights were abused.

Although this was a particularly brutal murder, and most of the facts concerning it were undisputed, the identity of the killers was in sharp dispute. Both co-defendants absolutely denied their involvement and presented alibi witnesses. The jury acquitted the co-defendant while convicting appellant.

Proof of appellant's guilt rested solely upon the testimony of the surviving victim. While I recognize the opportunity he had to observe the killers and his positive identification of appellant, there is still the problem that this was identification of a total stranger in the midst of a violent crime. Such identification, despite complete good faith of the witness, can be mistaken. *See United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Webb v. Havener,* 549 F.2d 1081, 1086 (6th Cir. 1977); *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976); E. Borchard, Convicting The Innocent (1932).

I find it impossible to join in holding that the prosecutor's questioning appellant about his failure to tell the police his alibi (when he had a clear constitutional right to remain silent) represented harmless error beyond reasonable doubt.