THE STATE OF OHIO, APPELLEE, *v.* MOTLEY, APPELLANT.

(No. 84AP-923—Decided March 14, 1985.)

*Michael Miller,* prosecuting attorney, and *Karen L. Martin,* for appellee.

*Myron Shwartz,* for appellant.

MOYER, J. This matter is before us on defendant's appeal from a judgment of the Court of Common Pleas of Franklin County on a jury verdict finding him guilty of receiving stolen property in violation of R.C. 2913.51, and the

resulting sentence of two years' imprisonment. The facts are summarized briefly as follows: defendant was arrested following a police chase while defendant was driving a late model Cadillac automobile that had been stolen from a Cadillac dealer in Cincinnati, Ohio. Defendant asserts the following three assignments of error in support of his appeal:

"1. The court below erred by permitting the state to introduce in its case-in-chief the fact that appellant exercised his Fifth Amendment rights when questioned by police.

"2. The trial court abused its discretion by not inquiring of counsel as to whether there was anything additional after giving its instructions, foreclosing trial counsel's right to object to the instructions.

"3. The court below erred by sending [court] reporter in to jury room to read instructions with [sic] presence of accused or his attorney."

At defendant's trial, one of the officers testified that, after defendant attempted to escape the police and ran into a telephone pole, the officer asked defendant if he wanted the officer to notify anyone what was happening and what defendant was going to be charged with, and that the defendant responded, "The only thing I want to know is how did you find me?"

Another officer testified at the trial that he advised defendant of his Miranda rights at the police station following his arrest and that defendant signed the waiver, but stated that he did not want to make any statement to the officer. There is no objection in the transcript to that testimony of the officer. However, counsel's representation to the court during oral argument that an objection was made off the record is corroborated by the trial court's admonition to the jury following a recess that it should disregard the officer's testimony to the effect that defendant exercised his constitutional right in not making any statements to the police officers. The trial court's instructions to the jurors that they were not permitted to draw any inferences from defendant's exercise of his constitutional right not to testify is clear and unequivocal. However, the question presented by the first assignment of error is whether the officer's statement was so prejudicial to defendant that even the trial court's adequate instruction is insufficient to overcome the harm to defendant from the testimony.

The leading case which deals with the limitations upon a prosecutor's inquiry into a defendant's silence following arrest and the giving of Miranda rights is Doyle v. Ohio (1976), 426 U.S. 610. In Doyle, the Supreme Court reversed the narcotics convictions of two defendants, who at trial presented alibi defenses about which they had been silent at the time of arrest, in a situation in which the prosecutor attempted to impeach the defendants by asking them why they had not told their alibi story to the arresting officer when they were arrested. The court in Doyle observed that silence in the wake of Miranda warnings may be nothing more than the arrestee's exercise of his Miranda rights and that every post-arrest silence is insolubly ambiguous because of what the state is required to advise the person arrested. The court further observed that, while Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings, and that it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

The court in Doyle noted that the state had not argued that the trial court's error in permitting cross-examination regarding defendants' post-arrest silence was harmless error.

That fact has been used to distinguish the holding in *Doyle* in at least two circuit court cases, *Hayton* v. *Egeler* (C.A.6, 1977), 555 F. 2d 599, and *Stone* v. *Estelle* (C.A.5, 1977), 556 F. 2d 1242. In *Stone,* the court distinguished *Doyle* and found no prejudicial error in the prosecutor's impeachment of a defendant, which tended to show that the defendant had not in fact cooperated with the police following his arrest as he had alleged at trial. In that case, the issue was not related to an exculpatory statement defendant had made at trial, and it was therefore distinguishable from *Doyle.*

In *Hayton,* the Sixth Circuit held nonprejudicial a single question posed to defendant during the trial which asked defendant why he had not disclosed the details of his alibi defense to a police officer in charge of the investigation when the officer and defendant had ridden together in a car during the period of defendant's pretrial custody. The court assumed that the posing of the question was error but found that it was harmless error beyond a reasonable doubt, citing *Chapman* v. *California* (1967), 386 U.S. 18. The court stated that the issue was whether the testimony about the silence could have influenced the jury and contributed to the conviction so that " 'absent the cross-examination * * *, "no juror could have entertained a reasonable doubt" as to * * * [the defendant's] guilt.' " *Hayton, supra,* at 603. The two facts found important in *Hayton* were that there was strong identification testimony upon which the jury could have found that defendant was the party who committed the crime in question. The second was that the testimony about which the defendant complained was contained in a single question and answer. The court emphasized the significance of the fact that the prosecutor did not pursue that line of questioning, did not refer to it after the single question was asked, and did not mention it in his final argument.

The court cited a third reason for holding the question nonprejudicial, which is not relevant to our consideration of the issue in this case.

The record in the case before us does not contain the identification evidence that is as strong as the evidence that supported the jury's verdict in *Hayton.* Even though the trial court, after the single question of the prosecutor and response of the police officer, offered an explicit instruction to the jury that it should disregard both the question and the answer, applying *Chapman* and *Hayton* to this case, we conclude that the prosecutor erred in eliciting from the police officer a statement regarding defendant's post-arrest silence and that it is not clear beyond a reasonable doubt that absent this statement of the officer no juror could have entertained a reasonable doubt as to defendant's guilt. The first assignment of error is sustained.

Defendant's second assignment of error is overruled. Crim. R. 30 places upon trial counsel the burden of objecting to an instruction given by the trial court to the jury. While the trial court in this case did not, on the record, make the usual inquiry suggested by 4 Ohio Jury Instructions (1984) 111, Section 413.90(2), defendant has not asserted in what manner he was prejudiced by the trial court's failure to give trial counsel the opportunity to object out of the presence of the jury. We do not know what objection would have been made had trial counsel been given the opportunity to object, and the second assignment of error is therefore not well-taken.

In support of his third assignment of error, defendant argues that the trial court erred to his prejudice when it sent the court reporter into the jury deliberation room to read an instruction to the jury out of the presence of defendant or his attorney. We agree. After the jury had been deliberating fifty minutes, it sent the judge a request that the testi-

mony of a certain witness be reread to the jury. The request was denied, and fifteen minutes later the jury sent to the trial judge the following cryptic question: "Definition of knowingly on the matter. Receipt of stolen possession [*sic*] or possession of stolen property." The word "difference" was written in an inverted position to the left of the other part of the question. The transcript continues: "Thereupon, the court reporter went into the jury deliberation room and read the definition of knowingly to them." Twenty minutes later the jury indicated that they had arrived at a verdict.

Defendant objects to the procedure used by the trial court because neither defendant nor his counsel was present when the court reporter read to the jury the definition or definitions requested by the jury in its second request for assistance. A defendant's right to be present or represented when a jury requests instructions from the trial judge during its deliberations is well-established. See *State* v. *Abrams* (1974), 39 Ohio St. 2d 53 [68 O.O.2d 30], and Crim. R. 43. This rule, as most rules, has its exceptions. Where the trial court rereads to the jury a portion of its original instruction to the jury, a defendant may not be prejudiced because he was not there for the rereading. See *State* v. *Johnson* (July 16, 1981), Franklin App. No. 81AP-56, unreported; *State* v. *Blackwell* (1984), 16 Ohio App. 3d 100; and *State* v. *Abrams, supra.* However, these cases are clearly distinguishable from the case before us. In the two opinions of this court cited above, defense counsel apparently was present when the trial judge himself reread verbatim the instructions he had previously given the jury. In *State* v. *Abrams, supra,* the trial court, with the defendant not present, refused to elaborate on its original instructions and offered rather to reread portions of those instructions — an offer which the jury refused to accept.

The distinguishing feature in each of the cases cited by counsel is that it was the trial judge who had the direct communication with the jury, and it was clear from the record precisely what the judge read or offered to read to them. In the case before us, it was the court reporter who was permitted to enter the jury room, apparently without the judge, and read that part of the instruction that the court reporter thought was responsive to the cryptic question of the jury. Such a practice is one step beyond the conduct criticized by then Justice Celebrezze in his dissenting opinion in *State* v. *Abrams* when he said:

"A court should not communicate with a jury in their deliberation room, nor should a court give the appearance by any action that any part of a trial is veiled in secrecy." *Id.* at 57.

Not only was neither defense counsel nor the defendant present when the trial judge responded to the jurors' request for assistance, but it was the court reporter, not the judge, who entered the jury deliberation room and then reported in the transcript only that "Thereupon, the court reporter went into the jury deliberation room and read the definition of knowingly to them." The transcript is devoid even of any statement by the trial judge to the court reporter regarding what she was to tell the jurors when she entered their deliberation room.

At page 44 of the transcript, the trial court's original jury instruction regarding "knowingly" appears in two different paragraphs, which are separated by a paragraph referring to a definition of "property." We do not know what portion or portions of the two paragraphs in which the term "knowingly" appears the court reporter felt were responsive to the jurors' request. Nor do we know what portion of the trial court's instructions the court reporter felt was responsive to that portion of the jurors' request that is stated: "Receipt of stolen possession [*sic*] or

244

possession of stolen property" with the word "difference" with a question mark after it written in the margin.

We conclude that it was highly prejudicial to defendant for the trial court to send the court reporter into the jury deliberation room, out of the presence of the defendant, defendant's counsel, and, apparently, the trial judge himself, for the purpose of responding to any question posed by the jury, much less the cryptic question posed by the jury in this case. The foregoing procedure violated defendant's constitutional right to a fair trial, and the third assignment of error is therefore sustained.

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded to the trial court.

*Judgment reversed*
*and case remanded.*

STRAUSBAUGH and McCORMAC, JJ., concur.