This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Randy Charlton, appeals from the decision of the Lorain County Court of Common Pleas. We affirm.
 {¶ 2} On September 22, 1998, Mr. Charlton was indicted for possession of crack cocaine, in violation of R.C. 2925.11(A), a first degree felony; possession of drug paraphernalia, in violation of R.C.2925.14(C)(1), a fourth degree misdemeanor; possession of criminal tools, in violation of R.C. 2923.24(A), a fifth degree felony; and possession of marijuana, in violation of R.C. 2925.11(A).
 {¶ 3} Mr. Charlton pled no contest and the trial court sentenced him accordingly. Mr. Charlton appealed the case to this Court in Case No. 00CA007718. On October 17, 2001, we reversed, and remanded the case back to the trial court.
 {¶ 4} On December 27, 2001, Mr. Charlton was indicted for perjury, in violation of R.C. 2921.11(A), a third degree felony. The perjury case was consolidated with the previous case and the matter went to a jury trial. The jury found Mr. Charlton guilty of possession of cocaine, possession of drug paraphernalia, possession of marijuana, and perjury. Mr. Charlton was found not guilty of possession of criminal tools. The trial court sentenced Mr. Charlton to twenty-five years in prison. It is from this judgment that Mr. Charlton appeals.
 {¶ 5} Mr. Charlton asserts six assignments of error. We will address the fifth assignment of error first to facilitate review.
 Fifth Assignment of Error {¶ 6} "THE VERDICT FINDING THE DEFENDANT/APPELLANT GUILTY OF PERJURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} In his fifth assignment of error, Mr. Charlton asserts that his conviction of perjury, in violation of R.C. 2921.11(A), is against the manifest weight of the evidence. We disagree.
 {¶ 8} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 {¶ 9} "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 10} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 11} In order to find Mr. Charlton guilty of perjury, the state needed to prove the elements set forth in R.C. 2921.11(A) as follows:
 {¶ 12} "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material."
 {¶ 13} A falsification is material if it can affect the course or outcome of the proceeding, regardless of its admissibility in evidence. R.C. 2921.11(B). Applying the foregoing to the facts of this case, we turn now to the evidence adduced at trial.
 {¶ 14} On March 2, 1998, a search warrant was executed at Mr. Charlton's residence at 2243 Oakdale Avenue, Lorain County, Ohio. The search produced a marijuana cigarette, a digital scale, a knife with traces of cocaine on it, a coffee pot having cocaine residue on the sides, and cocaine in an amount exceeding one hundred grams. The police also found over $10,000 in cash.
 {¶ 15} Lieutenant James Rohner, a supervisor in the Narcotics and Vice Division of the Lorain Police Department, testified at Mr. Charlton's trial that following the execution of the warrant, Mr. Charlton agreed to cooperate with the police in the investigation of Reginald Smith. A video surveillance was set up in Mr. Charlton's house. Lieutenant Rohner testified that Mr. Charlton was aware of the surveillance during the controlled payments and purchases of cocaine between Mr. Charlton and Mr. Smith. Lieutenant Rohner further testified that Mr. Charlton knew how to operate the video surveillance equipment and did operate it during some purchases. Detective Tom Nimon, a narcotics detective for the Lorain Police Department, testified that he taped a phone call from Mr. Smith to Mr. Charlton in Mr. Charlton's presence.
 {¶ 16} Mr. Smith's trial was held on August 5, 1999. The defense called Mr. Charlton as a witness for Mr. Smith. Mr. Charlton testified that Mr. Smith never sold him any drugs. Mr. Charlton further testified that he did not turn on any surveillance equipment and never made contact with Mr. Smith for the police. Rather, Mr. Charlton testified that he made contact with Mr. Smith so that he could get the money back that the police had taken during the March 2nd search of his house. When the video shows Mr. Charlton giving money to Mr. Smith, Mr. Charlton testified that he gave Mr. Smith only a portion of the money the police had given him to make the purchase. Mr. Charlton testified that he retained the remainder of the money to pay to others. At his own trial, Mr. Charlton testified that he had no intention of buying cocaine from Mr. Smith; rather, the cocaine he gave to police after paying Mr. Smith was obtained from another source.
 {¶ 17} On appeal, Mr. Charlton argues that the state did not prove that the statements he made during Mr. Smith's trial were material. Mr. Charlton argues that the state succeeded in convicting Mr. Smith; therefore, his statements were not material to the conviction. The plain language of R.C. 2921.11(B) is that a falsification is material if it can affect the outcome of the proceeding, not if it actually affects the outcome. See State v. Bell (1994), 97 Ohio App.3d 576, 579.
 {¶ 18} In the present case, the jury found the evidence to support a conviction of perjury. Based upon a review of the evidence as summarized above, this Court cannot say that the jury lost its way or created a manifest miscarriage of justice in finding that the false statements made by Mr. Charlton were material to Mr. Smith's trial.
 {¶ 19} Mr. Charlton's fifth assignment of error is overruled.
 First Assignment of Error {¶ 20} "THE TRIAL COURT ERRED WHEN IT REQUIRED DEFENDANT/APPELLANT TO RELINQUISH HIS FIFTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION IN ORDER TO ASSERT HIS SIXTH AMENDMENT RIGHTS, AS WELL AS VIOLATING DEFENDANT/APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 21} In his first assignment of error, Mr. Charlton asserts that the trial court erred by requiring him to relinquish his Fifth Amendment rights in order to assert his Sixth Amendment rights, as well as violating his rights under Article I, Section 10 of the Ohio Constitution. Mr. Charlton asserts that because the trial court refused to disclose information regarding a confidential informant and refused to allow any information regarding the confidential informant to go to the jury, this forced Mr. Charlton to take the stand to establish the defense of entrapment. Mr. Charlton limits his assigned error to the trial court's denial of his Fifth Amendment rights. We disagree.
 {¶ 22} When Mr. Charlton took the stand, his trial counsel questioned him as follows:
 {¶ 23} "Q Randy, I've told you that you do not have to testify here if you don't want to, correct?
 {¶ 24} "A Correct.
 {¶ 25} "* * *
 {¶ 26} "Q And you have decided that you want to testify in this case correct?
 {¶ 27} "A Yes."
 {¶ 28} It is clear from the transcript that Mr. Charlton was not forced to testify. This Court cannot find that the trial court forced Mr. Charlton to testify; therefore, the first assignment of error is overruled.
 Second Assignment of Error {¶ 29} "THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT."
 {¶ 30} In his second assignment of error, Mr. Charlton avers that the trial court erred by refusing to instruct the jury on the affirmative defense of entrapment. We disagree.
 {¶ 31} "In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." Cincinnati v. Epperson (1969), 20 Ohio St.2d 59, paragraph one of the syllabus.
 {¶ 32} The trial court agreed that the proposed instruction was a correct statement of law. "The evidence, however, as well as the law governs whether the jury should be instructed on an affirmative defense." State v. Esposito (Dec. 30, 1994), 9th Dist. No. 2337-M, citing State v. Guster (1981), 66 Ohio St.2d 266, 271. Therefore, the issue presented for review is whether the evidence presented necessitated an instruction on entrapment.
 {¶ 33} To successfully assert the criminal defense of entrapment, the defendant must show, by a preponderance of the evidence, that the criminal design originated with government officials and such officials implanted the disposition to commit the alleged offense in the mind of an innocent person. State v. Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus. "Entrapment does not exist where the accused was predisposed to commit the offense and the police `merely afford opportunities for the commission of the offense.'" Esposito, citing Sherman v. United States (1985), 356 U.S. 369, 372, 2 L.Ed.2d 848. The following factors are pertinent to the issue of predisposition:
 {¶ 34} "(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." Doran, 5 Ohio St.3d at 192.
 {¶ 35} When the defendant is ready and willing to break the law, the fact that a government agent provides what appears to be a favorable opportunity to do so is not entrapment as a matter of law. State v. Powers (June 29, 1994), 9th Dist. No. 2285-M.
 {¶ 36} Mr. Charlton testified that Darryl Davis was a confidential informant who brought cocaine, cash, and a scale to Mr. Charlton's home. He further testified that he was not predisposed to commit the offense. The evidence, however, shows that Mr. Charlton was predisposed and does not support an entrapment instruction. Evidence was presented that Mr. Charlton was previously convicted of trafficking in cocaine, that he was paid fifty dollars to cook the cocaine into crack for Mr. Davis, and that he had expert knowledge of cooking cocaine.
 {¶ 37} Mr. Charlton failed to meet his burden of proving entrapment as a matter of law. Consequently, the trial court did not err in refusing to give a jury instruction on the defense of entrapment. The second assignment of error is overruled.
 Third Assignment of Error {¶ 38} "THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE EVIDENCE OF DEFENDANT/APPELLANT'S SILENCE AFTER RECEIVING HIS MIRANDA WARNINGS AS EVIDENCE OF HIS GUILT."
 {¶ 39} In his third assignment of error, Mr. Charlton asserts that the trial court erred in allowing the state to use evidence of his silence after receiving his Miranda warnings as evidence of his guilt. We agree, however, we find this to be harmless error.
 {¶ 40} In Doyle v. Ohio (1976), 426 U.S. 610, 49 L.Ed.2d 91, the question presented was whether a prosecutor may seek to impeach a defendant's exculpatory story, told initially at trial, by cross-examining him concerning his failure to have told any story after receiving warnings pursuant to Miranda v. Arizona (1976), 384 U.S. 436,16 L.Ed.2d 694. The Supreme Court held that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of theFourteenth Amendment. Doyle, 426 U.S. at 619. "Doyle emphasized the unfairness of inviting a defendant to rely on the Miranda warnings' implied promise that his silence cannot be used against him, and then, in fact, using his silence against him." State v. Gillard (1988),40 Ohio St.3d 226, 231, citing State v. Osborne (1977), 50 Ohio St.2d 211. However, "a defendant who chooses to talk has not relied on that promise with respect to what he talks about." Id. Once a defendant beings speaking, he waives his right to suppress anything he actually says; however, the state cannot comment on his subsequent silence. State v. Lutz, 8th Dist. No. 80241, 2003-Ohio-275 at ¶ 110.
 {¶ 41} During the presentation of the state's evidence, Lieutenant Rohner testified that Mr. Charlton did not deny that the drugs and drug paraphernalia were his. The prosecution questioned Lieutenant Rohner as follows:
 {¶ 42} "Q You mean, even though it's been suggested that the Defendant had this stuff planted in his residence, he didn't say, What's that? It's not mine?
 {¶ 43} Never happened like that?
 {¶ 44} "A No.
 {¶ 45} "MR. DOYLE: Objection. Leading.
 {¶ 46} "THE COURT: Overruled.
 {¶ 47} "Q Would you have expected to see that type of reaction if something had been planted there without somebody's knowledge?
 {¶ 48} "A Yes.
 {¶ 49} "MR. DOYLE: Objection.
 {¶ 50} "THE COURT: Overruled.
 {¶ 51} In Gillard, the Ohio Supreme Court found that "because [defendant] did not remain silent, but freely gave his alibi, it was proper to inform the jury that he refused to give details to corroborate that alibi." Id. at 231. In the present case, while Mr. Charlton did speak with the police regarding the location of the drugs and the possibility of a deal, he did not attempt to give an exculpatory reason for the existence of the drugs in his house. Even if Mr. Charlton waived his Miranda rights, the state improperly attempted to impeach Mr. Charlton with his silence prior to Mr. Charlton taking the stand and presenting an inconsistent statement. We need not address whether Mr. Charlton waived his Miranda rights because we find that the error was not prejudicial.
 {¶ 52} The case of State v. Rowe (1993), 92 Ohio App.3d 652, presents facts substantially similar to the present case. In Rowe, the state called a detective in its case-in-chief and questioned the detective regarding defendant's refusal to waive her Miranda rights and request for an attorney. The appellate court held that detective's testimony would be reversible error if it was not clear beyond a reasonable doubt that absent the detective's testimony no juror could have entertained a reasonable doubt as to defendant's guilt. Id. at 670, citing State v. Motley (1985), 21 Ohio App.3d 240, 242.
 {¶ 53} This Court finds that given the remaining evidence of guilt, it is clear beyond a reasonable doubt that, absent Lieutenant Rohner's testimony regarding Mr. Charlton's silence, no juror could have entertained a reasonable doubt as to Mr. Charlton's guilt. Any error by the state in mentioning Mr. Charlton's silence was not prejudicial.
 {¶ 54} Mr. Charlton's third assignment of error is overruled.
 Fourth Assignment of Error {¶ 55} "THE TRIAL COURT ERRED WHEN IT JOINED THE OFFENSES CHARGED AGAINST THE DEFENDANT IN LORAIN COUNTY COURT OF COMMON PLEASE CASE NO. 98CR052602 AND CASE NO. 01CR059567."
 {¶ 56} In his fourth assignment of error, Mr. Charlton asserts that the trial court erred by joining Case No. 98CR052602 and Case No. 01CR059567. We disagree.
 {¶ 57} "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Lott (1990), 51 Ohio St.3d 160, 163, quoting State v. Torres (1981), 66 Ohio St.2d 340. An accused may move to sever cases under Crim.R. 14 upon a showing of prejudice. Lott,51 Ohio St.3d at 163. "For an appellate court to reverse a trial court ruling denying severance, the defendant must demonstrate that the trial court abused its discretion." Id. A defendant waives any error arising from the denial of his motion to sever made before trial if he does not renew his motion either after the state rests or at the conclusion of all the evidence. State v. White (Feb. 21, 2001), 9th Dist. No. 19930, citing State v. Owens (1975), 51 Ohio App.2d 132, 146.
 {¶ 58} Our review of the record indicates that Mr. Charlton has failed to preserve this issue for appeal. Prior to trial, the trial court held a hearing regarding the state's motion to consolidate. Mr. Charlton opposed the state's motion. Even if we were to assume that Mr. Charlton's opposition constituted a Crim.R. 14 motion for severance, Mr. Charlton failed to renew his motion at the close of the state's case or at the close of all the evidence. See, generally, State v. Hallam (Oct. 25, 1995), 9th Dist. No. 2405-M.
 {¶ 59} Mr. Charlton's fourth assignment of error is overruled.
 Sixth Assignment of Error {¶ 60} "THE TRIAL COURT ERRED IN SENTENCING DEFENDANT/APPELLANT TO MAXIMUM CONSECUTIVE SENTENCES."
 {¶ 61} In his sixth assignment of error, Mr. Charlton avers that the trial court erred in sentencing him to maximum consecutive sentences. We disagree.
 Possession of Crack-Cocaine {¶ 62} Mr. Charlton was sentenced to twenty years on the charge of possession of crack-cocaine with a major drug specification. R.C.2925.11(C)(4)(f) provides that, if the amount of drugs exceeds 100 grams of crack cocaine, the offender is a major drug offender and the court must impose the maximum prison term for a felony of the first degree. The maximum prison term for a first degree felony is ten years. R.C.2929.14(A)(1). The court may also impose an additional mandatory prison term prescribed for a major drug offender under R.C. 2929.14(D)(3)(b). R.C. 2925.11(C)(4)(f). R.C. 2929.14(D)(3)(b) states as follows:
 {¶ 63} "[t]he court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed under division (D)(3)(a) of this section * * * makes both of the findings set forth in divisions (D)(2)(b)(i) and (ii) of this section."
 {¶ 64} R.C. 2929.14(D)(2)(b) states as follows:
 {¶ 65} "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 {¶ 66} "(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12
of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."
 {¶ 67} The trial court's judgment entry sentencing Mr. Charlton as a major drug offender states as follows:
 {¶ 68} "The court also finds that a maximum basic prison term is inadequate to protect the public because one or more applicable factors under Ohio Rev. Code § 2929.12 indicating a defendant is more likely to commit future crimes outweigh any applicable factors indicating that a defendant is less likely to commit future crimes.
 {¶ 69} "The court also finds that the maximum basic prison term is demeaning to the seriousness of the offense because one or more factors under Ohio Rev. Code § 2929.12 that increase the seriousness of the offense outweigh any applicable factors indicating that the offense is less serious."
 {¶ 70} Mr. Charlton concedes in his brief that the trial court made the required findings under R.C. 2929.14(D)(2)(b)(i) that the factors indicating a greater likelihood of recidivism outweigh the factors indicating a lesser likelihood of recidivism. Mr. Charlton argues that the trial court did not make the required findings under (D)(2)(b)(ii) of that section and that there is no evidence in the record to support such a finding. It is clear that the trial court made the correct findings under (D)(2)(b)(ii) in the sentencing journal entry. However, Mr. Charlton does not limit his argument to procedural error. Rather, Mr. Charlton argues that the trial court erred substantively by making a finding not supported by the evidence.
 {¶ 71} "An appellate court may remand a matter to the trial court for resentencing if it finds that the trial court clearly and convincingly acted contrary to law." State v. Sackett, 9th Dist. No. 20919, 2002-Ohio-4865 citing R.C. 2953.08(G)(2)(b). Clear and convincing evidence is that "`which will produce in the mind of the trier of facts a firm belief or conviction as to the allegation sought to be established.'" State v. Eppinger (2001), 91 Ohio St.3d 158,164, quoting Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 72} R.C. 2929.14(D)(3)(b) does not require that the trial court make the specified findings on the record or at the sentencing hearing. State v. Stockwell (July 26, 2001), 8th Dist. No. 78501. While it is good practice for a trial court to expressly state its findings and reasons at the sentencing hearing or in the sentencing order, the statute does not require it.
 {¶ 73} In order to determine whether Mr. Charlton's conduct was more serious than conduct normally constituting the offense, the court had to consider eight enumerated items under R.C. 2929.12(B). Based upon the lengthy evidence presented during the trial, we cannot say that the trial court clearly and convincingly acted contrary to the law by finding that the maximum basic prison term was demeaning to the seriousness of this offense.
 Perjury {¶ 74} Mr. Charlton also argues that the trial court erred in sentencing him to the maximum of five years for committing perjury. When a trial court imposes a maximum sentence, it must make findings pursuant to R.C. 2929.14(C) and state its reasons pursuant to R.C. 2929.19(B)(2). State v. Edmonson (1999), 86 Ohio St.3d 324, 328. R.C. 2929.14(C) requires that a trial court find that an offender falls under one of four categories before it may impose the maximum sentence: offenders who committed the worst forms of the offense, offenders who pose the greatest likelihood of committing future crimes, certain major drug offenders under division (D)(3) of this section, and certain repeat violent offenders in accordance with division (D)(2) of this section. "We do not require the court to utter any `magic' or `talismanic' words, but it must be clear from the record that the court made the required findings." State v. White (1999), 135 Ohio App.3d 481, 486.
 {¶ 75} In the present case, when the trial court sentenced Mr. Charlton, it considered R.C. 2929.14(C). Specifically, the trial court found that the perjury Mr. Charlton committed was the worst form of the offense and that recidivism was likely. The trial court stated the following reasons during sentencing to support its findings: "based upon your prior record, based upon statements made during the trial in Judge Janas' Court and based upon the statements made in this Court."
 {¶ 76} In the present case, the trial court was presented with evidence that, pursuant to R.C. 2929.14(C), Mr. Charlton had committed the worst form of the offense and posed the greatest likelihood of committing future crimes. Further, the trial court stated the reasons why it believed that Mr. Charlton should receive the maximum sentence. After careful review of the record, this Court cannot find that the trial court erred in imposing the maximum sentence for Mr. Charlton's conviction of perjury.
 {¶ 77} Mr. Charlton's sixth assignment of error is overruled.
 {¶ 48} Mr. Charlton's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
SLABY, P.J., WHITMORE, J. CONCUR.