Charles **CULHANE** and Gerald **McGivern**, Petitioners,

v.

David **HARRIS**, Superintendent, Green Haven Correctional Facility, Respondent.

79 Civ. 2114.

United States District Court, S. D. New York.

March 30, 1981.

---

Tigar & Buffone, P. C. by Michael Tigar, John J. Privitera, John Mage, Washington, D. C., for petitioners.

Robert Abrams, Atty. Gen. of N. Y. by Tyrone Mark Powell, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Petitioners Charles Culhane and Gerald McGivern seek writs of habeas corpus pursuant to 28 U.S.C. § 2254. In 1975, a jury in Ulster County, New York found them guilty of felony murder, and each was sentenced to and is now serving an indeterminate term of twenty-five years to life. The conviction was twice affirmed, 57 A.D.2d 418, 395 N.Y.S.2d 517 (3d Dep't. 1977), *aff'd*, 45 N.Y.2d 757, 408 N.Y.S.2d 489, 380 N.E.2d 315 (1978), and certiorari was denied by the United States Supreme Court, *Culhane v. New York*, 439 U.S. 1047, 99 S.Ct. 723, 58 L.Ed.2d 706 (1978). State remedies having been exhausted, petitioners are now properly before me.

Petitioners had two prior trials on these charges. The first ended in a mistrial when the jury failed to agree. On the second trial they were found guilty and sentenced to death, but the New York Court of Appeals set the convictions aside because of errors in the jury selection. *People v. Culhane*, 33 N.Y.2d 90, 350 N.Y.S.2d 381, 305 N.E.2d 469 (1973).

Many of the basic facts are not in dispute. On September 13, 1968, two West-

chester County deputy sheriffs, Joseph Singer and William Fitzgerald, on assignment to transport the petitioners and a third prisoner, William Bowerman, from Auburn Prison to Westchester for a *coram nobis* hearing, were traveling down the New York State Thruway. The car was Deputy Fitzgerald's private car and had no safety screen separating the front seat from the back. The prisoners were seated in the back seat and the deputies sat in the front, taking turns driving. Each of the petitioners wore a security belt which had a simply-operated buckle in the back, and a metal ring in front through which the chain of his handcuffs passed. Bowerman's security belt, on the other hand, fastened in front with a chain which also was attached to his handcuffs. The three were not linked together. The two deputies, each right-handed, wore .38 caliber revolvers in holsters on their right hips.

At some point while Deputy Singer was driving, Bowerman asked him to pull over to the side of the highway so that he, Bowerman, could urinate. The seating arrangement at this critical moment was as follows: Singer was driving, Deputy Fitzgerald was seated in the front passenger's seat, and, in the back seat, Culhane was behind the driver, McGivern was in the middle, and Bowerman was on the right. It is undisputed that, as Singer braked the car, an escape was attempted, shots were fired, Bowerman and Deputy Fitzgerald died and Culhane and McGivern were wounded.

In sharp dispute, however, was whether Culhane and McGivern were participants in the abortive escape attempt. Petitioners both testified at trial [1] that Bowerman, the prisoner who was killed, had sliced open his security belt with a razor blade which he had concealed in his clothing, that he passed the razor blade to petitioners, silently indicating that they, too, should cut open their belts and join in his escape attempt, but that, frightened, they demurred, Culhane putting the razor blade into his jacket pocket, where the police in fact later found it. They further testified that as the car slowed down, Bowerman, his hands still cuffed but no longer bound to his waist, struck Deputy Fitzgerald over the head and grabbed Deputy Singer's gun from its holster. With Fitzgerald slumped over in the front passenger's seat and Singer disarmed, petitioners testified, Bowerman unbuckled Culhane's security belt and ordered Culhane to do the same for McGivern. At this point Fitzgerald revived and drew his gun, whereupon petitioners dove in fear to the floor of the car as Fitzgerald rose and faced Bowerman. Firing commenced, and petitioners claim they were wounded in the crossfire.

Deputy Singer, however, testified to quite a different chain of events. He stated that as he began to pull the car over, the security belts of all three prisoners in the back seat already were open and that Culhane and Bowerman simultaneously attacked the deputies, each prisoner choking the deputy in front of him with the chains of his handcuffs and his security belt. He said that it was McGivern, not Bowerman, who grabbed his, Singer's, gun. Then, according to Singer, Fitzgerald got free, drew his revolver, and exchanged shots with McGivern, the exchange leaving Fitzgerald, McGivern, and Culhane wounded, Fitzgerald fatally. It appears the car had come to a stop on the shoulder of the road at this point, and, Singer further testified, he then retrieved his gun from McGivern and tried to hold the prisoners at bay. Culhane, however, dove into the front seat in an apparent attempt to seize Fitzgerald's revolver. Singer said he shot at and missed Culhane, but succeeded in taking possession of his dying partner's gun with his left hand while he held his own gun in his right hand. Then, Singer further testified, while he was pointing both guns at the three prisoners, Bowerman suddenly grabbed the barrel of the gun in Singer's right hand at which point Singer shot and killed him with the other gun.

---

1. Unless otherwise noted, references to petitioners' "trial" are to the third trial, that which yielded the conviction in question.

The jury, obviously accepting Deputy Singer's version of the events, found petitioners guilty.

Petitioners attack their convictions on two grounds. The first, which they both assert, is that they were denied their rights to due process of law and compulsory process in violation of the Fifth, Sixth and Fourteenth amendments when the trial court excluded certain documentary evidence which they had offered in support of their defense. The second, asserted by McGivern alone, is that his Fifth and Fourteenth amendment rights against self-incrimination were violated when the court allowed the prosecution to cross-examine him and comment in summation to the jury on his failure to take the stand at either of the previous two trials.

The essence of petitioner's joint claim is that only Bowerman had attempted to escape and that they were innocent victims who had not participated in the attempt. Obviously, given the radically different versions of the events, petitioners were faced with major credibility problems: they were convicted felons, charged with the killing of a peace officer, and were contradicting the testimony of the surviving peace officer who was the partner of the victim. To meet this problem, petitioners did offer some circumstantial evidence consistent with their version of the facts. For example, a physician who examined Deputy Singer later on the day of the incident testified that he could find no evidence of any injury to the deputy's throat or neck, notwithstanding the fact that Singer had testified that Culhane had choked him with his, Culhane's, handcuffs. In addition, the pathologist who performed Fitzgerald's autopsy testified that Fitzgerald also bore no marks on his throat.[2]

The petitioners also sought to introduce certain documentary evidence consisting of records on Bowerman kept by the New York Department of Corrections and the state courts. These records documented Bowerman's history of escape attempts and his psychotic personality. Petitioners contended that the records constituted material support of the defense theory that the dead prisoner was prone to acts such as the one of which petitioners were accused. The trial court however, declined to permit the receipt of the records in evidence, ruling that they were incompetent, irrelevant, immaterial, and "would deprive the People of a fair trial." The Court of Appeals, over a vigorous dissent, held that the evidence was "irrelevant unless it were additionally shown that the prior escape attempts had been made in comparable circumstances, including the presence but nonparticipation of other potential escapees." *People v. Culhane, supra,* 45 N.Y.2d at 759, 408 N.Y.S.2d 489, 380 N.E.2d 315.

Ordinarily, federal courts may not review state court rulings on evidence whether on a direct appeal, or in a federal habeas corpus proceeding.[3] *Buchalter v. New York,* 319 U.S. 427, 63 S.Ct. 1129, 87

---

**2.** The pathologist did testify, however, that Fitzgerald had a small depression or bruise on his upper chest, such as might be caused by a rope or a chain.

**3.** Respondent also contends that petitioners are barred from asserting their joint habeas claim because they failed to make a contemporaneous objection to the trial judge's exclusion of the evidence in dispute. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The record is quite clear, however, that petitioners both challenged the court's ruling at the time it was made and explained the theory upon which they offered the Bowerman records. Defense counsel argued that the records would show that:

[Bowerman] didn't care about his life; that this man, the records would reflect, was in-

volved in escapes, ... that he was a dangerous type of person.

[W]e cannot produce the deceased Bowerman ... to question him under oath. I don't know of any other way that we can produce ... this most relevant evidence .... [T]he only remaining evidence that is of probative value are the official records that the Department of Correction deemed important, and we ask that [those records] be considered by this jury [because] .... [that evidence] goes to the very heart of the issue *who precipitated this break, who killed Deputy Fitzgerald, was it done by Bowerman alone or was it done by Bowerman in conjunction with our clients, which we vehemently dispute.* (Tr. 2420–21) (emphasis added).

750

L.Ed. 1492 (1943), *Chesney v. Robinson*, 403 F.Supp. 306 (D.Conn.1975), *aff'd without opinion*, 538 F.2d 308 (2d Cir. 1976), *cert. denied sub nom. Robinson v. Chesney*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147. The question before me, however, is not merely whether the exclusion of the Bowerman records was erroneous as an evidentiary matter, but whether it violated petitioners' rights to compulsory process or deprived them of a fair trial in violation of the due process clause of the Fourteenth Amendment. *Welcome v. Vincent*, 549 F.2d 853, 856 (2d Cir. 1977), *cert. denied sub nom. Fogg v. Welcome*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084.

■ A person charged with a crime has a constitutional right to present a defense. As the Supreme Court declared in *In Re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948):

A person's right to . . . an opportunity to be heard in his defense—a right to his day in court—[is] basic in our system of jurisprudence; and these rights include, as a minimum, a right . . . to offer testimony. . . .

That principle has been reiterated and expanded repeatedly since *In Re Oliver*. For example, in *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975), the Court commented:

The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice—. . . [including] the orderly introduction of evidence. In short, the [Sixth] Amendment [, applicable to the states through the Fourteenth Amendment,] constitutionalizes the right in an adversary criminal trial to make a defense as we know it. (citation omitted)

*See also Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The making of a defense however, assumes evidence that is not only relevant and material, but that is exculpatory as

well. *Pettijohn v. Hall*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315.

The evidence in question consists of eighty miscellaneous pages of Bowerman's presentence reports, indictments and informations, and various records and correspondence concerning his actions while incarcerated. The records reveal the following:

(1) Bowerman had been arrested many times and had frequently attempted to flee when police sought to apprehend him;

(2) Psychiatrists had diagnosed him as psychotic, with a psychopathic personality of the anti-social type;

(3) He had attempted suicide by slashing his wrists;

(4) He was confined, while under sentence, to two separate four-month periods in Matteawan State Hospital for the Criminally Insane;

(5) He had fled the jurisdiction while under parole supervision in 1958;

(6) He was rumored to have planned a jail break from the Brooklyn House of Detention, but he never attempted it, and an official investigation was dropped;

(7) He had attempted to escape in October 1953 while in the custody of jailers in the Meadowbrook Hospital parking lot, where he had been taken for treatment of an injury sustained in prison;

(8) In April 1963, Bowerman was the prime suspect in an armed robbery and had threatened to kill any police officer who tried to apprehend him. Acting on confidential information, uniformed police officers and two plainclothes detectives intercepted Bowerman in midtown Manhattan. A uniformed officer asked Bowerman for identification while the detectives stood nearby. Bowerman suddenly pulled a gun and attempted to seize the officer's revolver. One of the detectives drew his own gun, and Bowerman shot him. Eventually, however, Bowerman was forcibly subdued.

In assessing petitioners joint claim, the principal question with which I am faced is this: were these records or any portion of them so manifestly exculpatory as to render

their exclusion by the trial judge an error of constitutional magnitude? *Gale v. Harris*, 580 F.2d 52 (2d Cir. 1978), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979); *United States v. Taylor*, 562 F.2d 1345, 1362 (2d Cir. 1977), *cert. denied sub nom. Salley v. United States*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 and *cert. denied sub nom. Ramsey v. United States*, 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124; *United States v. Romano*, 482 F.2d 1183, 1194–95 (5th Cir. 1973), *cert. denied sub nom. Yassen v. United States*, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974).

Petitioners rely upon certain authorities which, they urge, require a finding that the trial judge's error *was* of such magnitude. In each of the cases, a defendant's offer of evidence was rejected by the trial court, and a federal reviewing court held that the exclusion infringed, in some respect, the defendant's constitutional right to a fair trial.

In *Washington v. Texas, supra*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, two Texas statutes prevented a participant in a crime from testifying on behalf of an alleged fellow participant at the latter's trial. The first participant already had been convicted in a prior trial and would have testified that he, not the defendant on trial, had fired the fatal shot and that defendant had tried to stop him. The Supreme Court held that preventing defendant from calling this witness was a denial of defendant's right to compulsory process for obtaining witnesses in his favor. *Chambers v. Mississippi, supra*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, on similar facts, is to the same effect.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), a burglary prosecution, defendant was not permitted to impeach the credibility of the prosecution's chief identification witness. Defendant sought to show that at the time of the events the witness was an adjudicated juvenile offender and was on probation for burglary. The defense sought to establish that the witness's vulnerable status as a probationer and his concern that he might be a suspect in the burglary with which defendant was charged would lead to possible bias and cause the witness falsely to incriminate defendant. An Alaska statute, however, protected the anonymity of juvenile offenders and thus prevented defendant from revealing the witness's juvenile record. The Supreme Court reversed the conviction, holding that the prohibition on the use of the juvenile record denied defendant his Sixth and Fourteenth amendment rights to confront and effectively cross-examine an adverse witness.

In *Ronson v. Commissioner of Correction of the State of New York*, 604 F.2d 176 (2d Cir. 1979), a defendant on trial for murder was not permitted to offer proof on his only defense, insanity, because he had failed to serve, in prescribed written form, timely notice of his intention to raise such a defense as required by New York's criminal procedure law. The defendant had, however, so informed the prosecution in a letter prior to trial. The Court of Appeals for the Second Circuit, affirming the issuance of a writ of habeas corpus, held that the defendant's right to compulsory process was violated by the trial court's strict application of the state procedural rule and its abuse of discretion in excluding the defense.

In *Pettijohn v. Hall, supra*, 599 F.2d 476, the defendant was not permitted to call an eyewitness to the robbery, who, in attempting to identify the culprit from police photographs, had first selected the photograph of another person. The Court of Appeals for the First Circuit held that the state trial court's erroneous exclusion of the proferred evidence as irrelevant violated defendant's right to compulsory process.

In *Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978), *cert. denied sub nom. Abrams v. Singleton*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979), defendant was one of three men in a car in which a bag of heroin was partly visible to a police officer who looked into the car. The trial court refused to grant a certain continuance to enable defendant to locate one of the other passengers who had taken a plea to possession of the narcotics and, at the time of taking the plea, had made statements tending to exon-

erate defendant. The witness had been subpoenaed by defendant and, not appearing, had been arrested by the state on a material witness warrant ordered by the Court. Unfortunately, however, the witness thereafter had been released due to the prosecutor's inadvertence. The Court of Appeals for the Second Circuit directed that the writ issue, holding that failure to grant the requested continuance violated defendant's right to compulsory process.

The foregoing recital of the facts in the various authorities [4] relied on by petitioners clearly establishes that the constitutional violation in these cases was the exclusion of unquestionably exculpatory evidence. Thus, in *Washington v. Texas*, the excluded witness would have testified that he, not the defendant, had committed the crime. In *Chambers*, the excluded evidence would have revealed that another man had confessed several times to the shooting. In *Pettijohn*, the excluded eyewitness would have testified that he had first identified some person other than the defendant as the culprit. In *Singleton*, the missing witness would have testified that the defendant had not been involved in the narcotics possession. In *Ronson*, defendant's only defense, insanity, would have been before the jury for consideration.

■ I conclude, however, that, unlike in the foregoing cases, the Bowerman records do not exculpate petitioners. Those records do establish several facts: that Bowerman had an extensive criminal record, that he was seriously emotionally disturbed, that he was a dangerous, and reckless individual, and that he had been involved in escape attempts before. The records do not, however, tend to show—and this is the critical

factor—that Culhane and McGivern were not participants with him in this particular escape attempt. The jury could well have concluded that the three prisoners had planned this escape before being placed in the car, or that when Bowerman made his move, the others joined him in the attempt. The fact that Bowerman previously had attempted to escape does not compel or even suggest the exculpatory inference that on this occasion Culhane and McGivern were *not* participants.

■ Given the foregoing, I need not reach the question of whether the trial judge erred in excluding any part of these records for other reasons, for if error there was, it was not of constitutional dimension. Petitioners had the opportunity to present and did present their defense. They told their story, and got in their evidence, save for these non-exculpatory records. Accordingly, petitioners' first and joint claim for habeas corpus relief must fail.

The petition's second claim, asserted by McGivern alone, alleges that his Fifth and Fourteenth amendment right against self-incrimination was violated when, upon his taking the stand for the first time at the third trial, the prosecution was permitted to cross-examine him about his decision not to testify at his first two trials and to urge the jury to draw an adverse inference from that prior silence.[5] While McGivern has not called the court's attention to specific places in the trial transcript which contain the allegedly offending questions and argument,[6] and while the record does not reveal the same clear impeachment with prior silence that the Supreme Court condemned in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the record does con-

---

**4.** Petitioners cite *Davis* for the proposition that a state law of evidence must yield to a defendant's right to present his defense. *Davis*, however, involved a defendant who was barred from certain cross-examination going to bias, not from introducing affirmative evidence in his direct defense.

**5.** Although petitioner McGivern elected to exercise his privilege in the first two trials, choosing to testify only at the third trial, petitioner Culhane testified at all three trials.

**6.** Further, I note that while McGivern did not specify the allegedly offending transcript references before the Appellate Division or the Court of Appeals, the state has never challenged the factual basis of McGivern's claim at any stage of the proceedings. It has argued only that impeachment with prior silence presents no constitutional problem.

tain a number of instances in which the prosecutor referred, albeit obliquely, to the fact that McGivern had not testified at either of the two prior trials and thus conveyed that fact to the jury.

Respondent, at the outset, contends that petitioner has waived his claim by his failure to take a "contemporaneous objection" to the allegedly offending questions and summation, citing *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Petitioner essentially concedes that at the trial no constitutional objection was made to any question, and no objection whatever was made to the relevant portions of the prosecution's summation. The law of New York, however, gives the state's intermediate appellate court discretion to consider alleged errors, despite failure to make a timely objection,[7] and petitioner did present the instant constitutional challenge to two appellate courts in New York, which considered and rejected it on the merits, not on procedural grounds. *People v. Culhane*, 57 App.Div.2d 418, 395 N.Y.S.2d 517 (3d Dep't 1977), aff'd 45 N.Y.2d 757, 408 N.Y. S.2d 489, 380 N.E.2d 315 (1978).[8] I therefore conclude that *Wainwright v. Sykes*, is not a bar and that McGivern's individual claim for habeas relief is properly before me.[9]

■ On the merits, the resolution of McGivern's claim substantially depends on the validity and applicability of *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). Respondent contends that *Raffel* is directly on point and mandates denial. Petitioner argues that *Raffel* can be distinguished and that, in any event, *Raffel* is no longer viable precedent. De-

fendant Raffel was indicted and twice tried for owning a "speakeasy" in violation of the National Prohibition Act. At the first trial a prohibition agent testified that Raffel admitted owning the "speakeasy" that had been raided. Raffel did not testify, and there was a mistrial when the jury disagreed. On the second trial, at which he was convicted, Raffel did take the stand and denied making the statement which the agent again had attributed to him. The court itself then asked Raffel why he had not testified at the first trial, to which he answered, "I did not think there was enough evidence to do it." He further stated that his failure to take the stand was on the advice of counsel. The Supreme Court found no error in this disclosure of Raffel's prior silence, holding that the privilege against self-incrimination does not extend beyond the proceeding at which it was invoked and that "a witness who upon direct examination denies making statements relevant to the issue, may be cross-examined with respect to conduct on his part inconsistent with this denial." 271 U.S. at 498, 46 S.Ct. at 568. Thus, the Court necessarily concluded that, notwithstanding the Fifth Amendment, it was appropriate to impeach the defendant by drawing to the jury's attention the fact that exculpatory testimony given on the second trial had not been proffered on the first trial under similar circumstances.

The rule of the *Raffel* case has not remained unquestioned or uncircumscribed in the years since the decision was handed down. Nor has the breadth of the privilege against self-incrimination remained fixed in the interim. *See Grunewald v. United States*, 353 U.S. 391, 426, 77 S.Ct. 963, 985, 1

---

7. N.Y.Crim.Proc.Law § 470.15(1) provides:

    Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant.

8. In addition, I note that the New York Court of Appeals has fashioned a judicial exception to the contemporaneous objection rule where the unobjected-to ruling appealed from affects a "fundamental constitutional right." *People v.*

*McLucas*, 15 N.Y.2d 167, 172, 256 N.Y.S.2d 799, 204 N.E.2d 846 (1965). *Accord, People v. Arthur*, 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968).

9. The Supreme Court has explicitly recognized both of the aforementioned exceptions to the New York contemporaneous objection rule and has held that *Wainwright v. Sykes* does not apply if either is properly invoked. *County Court of Ulster County v. Allen*, 442 U.S. 140, 147–154, 99 S.Ct. 2213, 2219–2223, 60 L.Ed.2d 777.

L.Ed.2d 931 (1957); *Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Id.*, at 632–3 n.11, 96 S.Ct. at 2251–2252 n.11 (Stevens, J., dissenting); *United States ex rel. Smith v. Rowe*, 618 F.2d 1204, 1212 n.6 (7th Cir. 1980) *vacated sub nom. Franzen v. Smith*, —— U.S. ——, 101 S.Ct. 57, 66 L.Ed.2d 13; *United States v. Vega*, 589 F.2d 1147, 1152 n.3 (2d Cir. 1978); *Hayton v. Egeler*, 555 F.2d 599, 603 (6th Cir. 1977), *cert. denied*, 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463; and *Carter v. Kentucky*, —— U.S. ——, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981).

Petitioner McGivern argues that these authorities compel the conclusion that *Raffel* is no longer binding precedent. I cannot agree. However much *Raffel* has been circumscribed and criticized, it has not been overruled, notwithstanding that the Court has had several opportunities to do so. *E. g., Stewart v. United States, supra*, 366 U.S. at 5–6, 81 S.Ct. at 943–944; *United States v. Hale*, 422 U.S. 171, 175 n.4, 95 S.Ct. 2133, 2136 n.4, 45 L.Ed.2d 99 (1975). Furthermore, in the recent case of *Jenkins v. Anderson*, 447 U.S. 231, 232–239, 100 S.Ct. 2124, 2126–2130, 65 L.Ed.2d 86 (1980), the majority opinion cites *Raffel* with approval. In *Jenkins* the Court held that impeachment at trial with the defendant's pre-arrest silence violates neither the privilege against self-incrimination nor fundamental fairness. In so holding, the Court invoked *Raffel* for the proposition that "the Fifth Amendment [privilege against self-incrimination] is not violated when a defendant who testifies in his own defense is impeached with his prior silence." *Id.*, at 235, 100 S.Ct. at 2127.

Finally, McGivern argues that even if *Raffel* remains viable, it does not apply to the facts of this case. Here, too, I cannot agree. Petitioner chose not to testify at his first two trials, even in the face of the testimony of Deputy Singer that he, McGivern, had seized Singer's gun and fired the shots which killed Deputy Fitzgerald. At the third trial, perhaps appreciating the

fact that this strategy had failed at the previous trials, McGivern did take the stand, denied Singer's story, and swore that Bowerman, *not* he, had grabbed the gun and killed Fitzgerald. In addition, his testimony put a more favorable cast on some otherwise damaging aspects of co-defendant Culhane's testimony given over the various trials.[10] His situation is therefore clearly governed by *Raffel*, where the defendant, faced with testimony that he had admitted the crime, was silent at his first trial but took the stand at his second trial to deny making such a statement. It therefore follows that McGivern's separate claim fails to allege a violation of his constitutional rights.

Accordingly, the various applications for writs of habeas corpus are denied in all respects.

So ordered.

---

**10.** To the prosecutor, this situation was necessarily redolent of "recent fabrication", which, absent Fifth Amendment considerations, he was entitled to argue to the jury.