JOURNAL ENTRY and OPINION
{¶ 1} Appellant, William James, appeals his conviction pursuant to a jury trial held in the common pleas court. After a thorough review of the arguments presented and for the reasons set forth below, we affirm.
 {¶ 2} On October 14, 2004, appellant was indicted on one count of forgery, in violation of R.C. 2913.31, a felony of the fifth degree, and one count of uttering, in violation of R.C.2913.31, also a felony of the fifth degree.
 {¶ 3} The incident which led to appellant's indictment occurred on August 23, 2004, at the Lakewood branch of the Huntington Bank on Detroit Avenue. Appellant entered the bank and presented an "official" Huntington Bank cashier's check for $3,650 to the bank teller, Suzanne Moore ("Moore"). Moore immediately realized by its color, feel, and print, that the check appeared to be counterfeit.
 {¶ 4} Once the validity of the check came into question, Moore took steps to verify that the check was counterfeit. During this time, appellant provided Moore with identification and an envelope from Nigeria. He claimed that he had received the check from someone in Nigeria, a person whom he met over the internet. Moore testified that during the time she was verifying the check, appellant appeared nervous and asked if he was in trouble. Once Moore received final confirmation that the check was indeed counterfeit, the police were called to the bank.
 {¶ 5} Officer Marcus Adkins ("Adkins") of the Lakewood Police Department responded. As Adkins entered the bank through one of its two access doors, he observed appellant glance at him and immediately run out of the bank through the other door. Moore testified that she observed appellant look at the police officer and then immediately run out of the bank. Adkins pursued appellant, who ran down a side street and then down Detroit Avenue. Throughout the pursuit, Adkins yelled to appellant to stop, but to no avail. Appellant eventually ran into the Lakewood library, where Adkins caught up with him as he exited a bathroom. Appellant was subsequently arrested.
 {¶ 6} A jury trial began on May 23, 2005. On May 24, 2005, the jury returned a verdict of not guilty of forgery, but found appellant guilty of uttering. On June 23, 2005, the trial court sentenced him to two years of community control. Appellant now appeals his conviction, asserting two assignments of error for our review:
 {¶ 7} "I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF UTTERING.
 {¶ 8} "II. APPELLANT'S CONVICTION FOR UTTERING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Sufficiency of the Evidence
 {¶ 9} In his first assignment of error, appellant contends that there was insufficient evidence to sustain his conviction for uttering. Upon review of the record, we find the evidence presented at trial to be legally sufficient to support appellant's conviction.
 {¶ 10} Where evidence is legally sufficient to support a conviction, the conviction cannot be overturned on the basis of insufficiency of evidence; however, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbsv. Florida (1982), 457 U.S. 31, citing Jackson v. Virginia
(1979), 443 U.S. 307. To properly review an argument based on sufficiency of the evidence, the appellate court must determine after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 11} Appellant was convicted of uttering, in violation of R.C. 2913.31, which reads in pertinent part:
 {¶ 12} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 13} "* * *
 {¶ 14} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 15} Appellant argues that the prosecution failed to present sufficient evidence to prove the element of "knowingly" to sustain his conviction. He asserts that there was insufficient evidence to show that he knowingly was in possession of a writing that he knew was a forgery. We disagree.
 {¶ 16} There is no dispute that the cashier's check presented by appellant was counterfeit. He argues that he did not know the check was a forgery and asserts that he received this check from a woman in Nigeria, whom he met via the internet. Appellant contends that this woman explained that she would be sending him a check. He claims that when he received the check in the mail, he did not know it was not valid. He presented an envelope from Nigeria to support his contention. However, further evidence presented at trial, including circumstantial evidence, supports a finding that appellant did know the nature of the check.
 {¶ 17} The cashier's check in question was admitted into evidence. The fact that the check was made out to appellant and came from a company in Columbus, Ohio, can reasonably be seen as a contradiction to appellant's story. Furthermore, circumstantial evidence, viewed in a light most favorable to the prosecution, clearly demonstrates that the state sufficiently established the elements of "knowingly" in this case. The record reflects that appellant acted nervous when Moore began her efforts to confirm the check's validity. The record reflects that once appellant saw a police officer enter the bank, he fled the scene. He did so without retrieving his driver's license, which he had given to the teller for identification purposes. He left everything and ran out of the bank.
 {¶ 18} Appellant made efforts to explain his quick flight from the bank during his testimony. He claimed that he ran out of the bank because he had to use the bathroom and the bank did not have any public restrooms. However, Adkins observed appellant run past several businesses, including a flower shop, a Domino's Pizza, a Subway restaurant, a dry cleaner, a Burger King, and a Caribou Coffee, all of which Adkins personally knew had public restrooms.
 {¶ 19} Furthermore, the evidence shows that appellant did not heed Adkins' orders to stop. Again, appellant gave an explanation for his actions, this time stating that his use of an MP3 player with ear plugs in his ears prevented him from hearing Adkins' orders. For this explanation to be viable, the jury would have to believe that appellant, in his quick flight from the bank to find a specific restroom in the library, still took the time to put ear plugs in his ears and turn on his MP3 player while he was running. A rational trier of fact could clearly have rejected that contention and found that the state had established the element of knowingly.
 {¶ 20} In viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence in this case to sustain appellant's conviction for uttering. His first assignment of error is therefore without merit.
Manifest Weight
 {¶ 21} Manifest weight of the evidence is subject to a different standard than is sufficiency of the evidence. ArticleIV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 22} The United States Supreme Court recognized the distinction in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. TheMartin court stated:
 {¶ 23} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 24} In the instant case, we find that appellant's conviction was not against the manifest weight of the evidence. Appellant again argues that it was against the manifest weight of the evidence for the jury to find that the state proved the intent element of "knowingly" for the crime of uttering. InJenks, supra, the Supreme Court of Ohio explained that circumstantial evidence carries the same weight as any other type of evidence, stating:
 {¶ 25} "`* * * proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. * * *'"
 {¶ 26} Thus, the evidence articulated in addressing appellant's first assignment of error is also relevant in addressing this assignment of error. In reaching its verdict, the jury was presented with two versions of how appellant came to present a forged check to the bank. The circumstantial evidence presented to the jury appears to have heavily favored the state's version of the events and discredited appellant's version. This court has held that "the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. We are further mindful that the jury is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms, in order to determine the credibility of each witness. See State v. Sanders (Nov. 21, 2000), Franklin App. No. 99 AP-1486." State v. Dowd,
2002-Ohio-7061, ¶ 23.
 {¶ 27} In view of the evidence presented in this record, we cannot say that the jury clearly lost its way in finding appellant guilty of the crime of uttering. Appellant's second assignment of error is also without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Cooney, J., concur.