[Cite as *State v. Robinson*, 2022-Ohio-1940.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :
                                                                  No. 110883
    v.                                          :

CHARLES ROBINSON, JR.,          :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 9, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-624833-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mallory Buelow, Assistant Prosecuting
Attorney, *for appellee.*

Flowers & Grube, Louis E. Grube, and Melissa A. Ghrist,
*for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Charles Robinson, Jr. ("Robinson"), appeals from his convictions following a jury trial and raises five assignments of error. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On July 5, 2017, attorney James Hungerford ("Hungerford") arrived at his law office in Cleveland, Ohio and discovered the front glass door broken, the office ransacked, and his notary stamp and an envelope with cash and undeposited checks missing. Hungerford reported the break-in to the police and installed a board to temporarily replace the broken glass door.

{¶ 3} On July 6, 2017, Hungerford arrived at work around 9:00 a.m. and found his office had been ransacked again overnight.  Notably, two U.S. Bank check books — one from Hungerford's personal account and one from his business account — had been stolen.

{¶ 4} At 9:10 a.m. on that same date, Robinson cashed a check in the amount of $461 written from Hungerford's business account at U.S. Bank's West 98th Street branch ("West 98th Street branch").  Several hours later, Robinson attempted to cash two checks at U.S. Bank's West 25th Street branch ("West 25th Street branch") — one written from Hungerford's personal account in the amount of $340 and one written from his business account in the amount of $505.  On the memo line of all checks was written "office repairs."  The checks were written from the checkbooks stolen from Hungerford's office the previous day.

{¶ 5} When Robinson attempted to cash the two checks at the West 25th Street branch, the bank teller noted the checks each totaled over $200 and were not drawn on Robinson's own account and, therefore, the branch's protocol required

branch manager Angela Green ("Green") to review the checks for fraud.[1] Green obtained Robinson's driver's license and reviewed Hungerford's account profiles. While completing those tasks, Robinson's behavior at the branch raised Green's suspicion. Robinson became "antsy" and asked Green several times why the process was taking so long. Robinson also whispered back and forth with the gentleman with whom he entered the bank. According to Green, this behavior was caught on video, although no video was introduced at trial.

{¶ 6} As part of her fraud review, Green compared Hungerford's signature that was available through the bank's imaging with the signatures on the two checks presented by Robinson. Green did not believe the checks provided by Robinson were signed by Hungerford. Green also noted that Robinson cashed a check written from Hungerford's business account earlier that day at the West 98th Street branch. Green found it unusual that Robinson cashed a check at 9:10 a.m. and within a few hours, presented at another bank branch to cash two additional checks from Hungerford's accounts.[2]

{¶ 7} As part of her fraud review, Green contacted Hungerford and inquired about the checks presented by Robinson. Hungerford stated he did not know Robinson, Robinson never performed office repairs for him, and Hungerford

---

[1] At trial, Green identified Robinson as the individual who attempted to cash the checks in question at both bank branches.

[2] Green initially testified that she found it suspicious that the checks presented for her review were not in sequential order with one another. Green later conceded that it was immaterial that the checks, written from two different accounts, were not in sequential order.

never wrote a check made payable to Robinson. Based upon her fraud review, Green returned Robinson's driver's license but informed him she could not cash the checks. Green retained the checks and Robinson left the bank.

{¶ 8} On February 14, 2018, based upon the three checks drawn from Hungerford's accounts and made payable to Robinson and Robinson's actions with those checks, a Cuyahoga County Grand Jury indicted Robinson on three counts of forgery in violation of R.C. 2913.31(A)(3), felonies of the fifth degree, and one count of theft in violation of R.C. 2913.02(A)(3), a felony of the fifth degree.

{¶ 9} Under the same indictment, the grand jury indicted William Genco ("Genco") on one count of breaking and entering, two counts of theft, one count of vandalism, and one count of forgery. The evidence against Genco included DNA blood evidence collected at Hungerford's office following the July 5, 2017 incident. The state charged Genco for breaking and entering at Hungerford's office and stealing his checkbooks. The charges against Robinson and Genco stemmed from the same course of conduct but represented separate offenses.

{¶ 10} On March 1, 2018, the court issued a capias for Robinson. On May 1, 2020, the court obtained custody of Robinson, Robinson pleaded not guilty to the indictment, and the court released Robinson on bond. The court conducted numerous pretrials on this matter, and Robinson indicated his desire to proceed to trial. On October 29, 2020, Robinson failed to appear in court and the court issued another capias. Upon Robinson's court appearance on November 10, 2020, the court recalled the capias. On July 28, 2021, the case proceeded to a jury trial.

{¶ 11} At trial, the court granted the state's motion in limine to exclude any mention of codefendant Genco's convictions. Hungerford, Green, and the police officer who investigated the break-ins at Hungerford's office testified at trial. The court denied Robinson's motions for a Crim.R. 29 dismissal and mistrial. Following deliberations, the jury rendered a verdict that found Robinson guilty of three counts of forgery, felonies of the fifth degree, and one count of theft, a misdemeanor of the first degree.[3] The trial court denied Robinson's motion for judgment notwithstanding the verdict and motion for a new trial. The court referred the Robinson to the county probation department for a presentence-investigation report and scheduled a sentencing hearing on September 2, 2021.

{¶ 12} The court sentenced Robinson to serve five years of community-control on the forgery charges with various conditions and ordered a $1,000 fine on the theft charge.

{¶ 13} On October 6, 2021, Robinson filed a timely notice of appeal raising the following five assignments of error for our review:

> Assignment of Error I: The trial court erred by failing to grant the motion for judgment of acquittal as to the crimes of forgery and theft because the state presented insufficient evidence to sustain a guilty verdict.

> Assignment of Error II: The trial court erred by denying defendant's motion for mistrial.

---

[3] The indictment charged Robinson with theft, a felony of the fifth degree. Because the trial evidence showed Robinson's theft was in the amount of $461 — under $1,000 — the evidence supported a finding that Robinson was in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree. Counsel for both parties agreed.

Assignment of Error III: The trial court erred by granting the state's motion to exclude evidence of the co-defendant's guilty plea and convictions.

Assignment of Error IV: The trial court committed plain error by permitting the state to rely on facts not in evidence during closing arguments.

Assignment of Error V: Cumulatively prejudicial errors rendered the trial unfair to the defendant.

## Legal Analysis

## I. Sufficiency of the Evidence

{¶ 14} In his first assignment of error, Robinson argues that the trial court improperly denied his Crim.R. 29 motion because the state did not present sufficient evidence that he committed forgery by uttering and theft. Specifically, Robinson contends that there was insufficient evidence to demonstrate he knowingly possessed forged checks. We disagree.

{¶ 15} According to Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29(A) motion challenges the legal sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 16} With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted

at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. An appellate court reviewing sufficiency of the evidence must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Clemm*, 8th Dist. Cuyahoga No. 101291, 2015-Ohio-594, ¶ 15, citing *Jenks*.

## A. Forgery by Uttering

{¶ 17} The jury convicted Robinson of forgery by uttering in violation of R.C. 2913.31(A)(3). The statute reads, in pertinent part:

> (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: * * * (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

R.C. 2913.31(A)(3). "Utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶ 18} The evidence shows that on July 5, 2017, Hungerford's personal and business checkbooks were stolen by Genco. At approximately 9:10 a.m. on July 6, 2017, Robinson cashed a check written from Hungerford's business account at the West 98th Street branch. Later that same day, between noon and 2:00 p.m., Robinson attempted to cash two additional checks at the West 25th Street branch. All three checks were written from Hungerford's stolen checkbooks, were made

payable to Robinson, and included the wording "office repairs" in their memo lines. Hungerford testified that he did not know Robinson, Robinson never performed office repairs for Hungerford, and Hungerford never issued a check to Robinson.

{¶ 19} Further, the evidence shows that the West 25th Street branch was a high-risk branch where Green observed fraud daily. The bank trained Green on security including compliance with bank regulations and fraud. Green testified that another man accompanied Robinson, and she found the way the men whispered to one another suspicious. Robinson appeared "antsy" and anxious to leave the bank; Robinson asked Green why it was taking so long to complete his transaction. Robinson was "agitated and a little bit upset" when Green returned Robinson's driver's license but retained the checks and informed him she could not cash the two checks presented by Robinson.

{¶ 20} The evidence further shows that Officer Beverly Fraticelli ("Fraticelli") of the Cleveland Division of Police was assigned to investigate the breaking and entering at Hungerford's office and the subsequent attempt to cash Hungerford's stolen checks. Fraticelli interviewed Hungerford and U.S. Bank representatives and obtained a photo of Robinson attempting to cash checks at the West 98th branch on July 6, 2017. Based upon her investigation, Fraticelli concluded Genco stole the checkbooks from Hungerford's law office, Robinson cashed one of the stolen checks at the West 98th Street branch, and Robinson attempted to cash two checks at the West 25th Street branch.

{¶ 21} Robinson contends that absent an endorsement on the two checks presented at the West 25th Street branch, the state could not prove that Robinson uttered the checks. The statute does not require endorsements on checks to establish uttering. R.C. 2913.31(A)(3). The facts demonstrate that Robinson handed the checks to the bank teller, or displayed the checks, knowing the checks to be forged. Robinson's actions showed his intent to cash the checks and, therefore, met the definition of utter. *See* R.C. 2913.01(H)("'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display.").

{¶ 22} Robinson also argues that Green's observations that Robinson was "antsy" and anxious to leave the bank and the fact that he cashed a check earlier in the day were insufficient evidence to demonstrate Robinson's knowledge that the three checks were forged. Robinson relies on *State v. Shabazz*, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828, where the court found that evidence of the defendant talking amongst a group and looking in the direction of the individual who was subsequently shot and killed was insufficient evidence to support an aggravated murder conviction.

{¶ 23} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *Brook Park v. Gannon*, 2019-Ohio-2224, 137 N.E.3d 701, ¶ 24 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). Here, the evidence presented by the state goes beyond Green simply observing Robinson's

outward behavior and was sufficient to show Robinson's knowledge and intent to cash the forged checks. While much of the evidence is circumstantial, it is still probative and may be relied upon to establish Robinson's guilt. *See State v. James*, 8th Dist. Cuyahoga No. 86774, 2006-Ohio-2570 (circumstantial evidence demonstrated defendant's knowledge that he attempted to utter a forged check.)

{¶ 24} Viewing the evidence in the light most favorable to the state, any rational trier of fact could have found that Robinson knew the checks were not drafted by Hungerford and Robinson knew the checks were forged when he attempted to cash them, satisfying the elements of R.C. 2913.31(A)(3). Therefore, the trial court properly denied Robinson's Crim.R. 29 motion on forgery charges.

## B. Theft

{¶ 25} The jury convicted Robinson of theft in violation of R.C. 2913.02(A)(3) that reads, in pertinent part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) By deception * * *

Deception is defined under R.C. 2913.01(A) as:

> knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

The jury found Robinson guilty of theft when he cashed the $461 check from Hungerford's business account.

{¶ 26} Here, the evidence demonstrates that Hungerford's checkbook was stolen on July 5, 2017, and, at 9:10 a.m. the next day, Robinson cashed a check written from Hungerford's account. The check purported to be in payment for Robinson's completion of office work for Hungerford, yet Hungerford testified he did not know Robinson, he never hired Robinson to complete office work, nor did he write a check to Robinson for such services. Green testified that the state's exhibit No. 4 depicted Robinson at the West 98th branch, a branch she had worked at on prior occasions.[4]

{¶ 27} Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Robinson knew the check in the amount of $461 was not written by Hungerford when Robinson cashed it and, therefore, Robinson's acts satisfied the elements of R.C. 2913.02(A)(3) for the conviction of theft. Thus, the trial court properly denied Robinson's Crim.R. 29 motion on theft charges.

{¶ 28} Robinson's first assignment of error is overruled.

## II. Motion for Mistrial

{¶ 29} In his second assignment of error, Robinson argues that the trial court erred when it denied his motion for mistrial. Specifically, he contends the assistant prosecuting attorney's reference to Robinson's decision not to testify at trial caused prejudicial error necessitating a mistrial.

---

[4] State's exhibit No. 4 is a surveillance screen shot that depicts Robinson in the bank teller line at the West 98th Street branch.

{¶ 30} Denial of a motion for mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing Crim.R. 33, and *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected[.]" *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus. A trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). "Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused or the prosecution are adversely or materially affected." *State v. Wilson*, 8th Dist. Cuyahoga No. 92148, 2010-Ohio-550, ¶ 13, quoting *State v. Goerndt*, 8th Dist. Cuyahoga No. 88892, 2007-Ohio-4067, ¶ 21.

{¶ 32} In the instant case, Robinson argues that the state improperly commented upon Robinson's decision to remain silent at trial. During closing arguments, the assistant prosecuting attorney referenced Robinson's choice not to testify at trial while she addressed the elements of forgery by uttering:

THE STATE: The offense states that no person shall knowingly utter, and in this case utter means to hand over a check, that he knows to be forged. He doesn't have to forge that check himself. So who did in this case is irrelevant.

That being said, the element of knowledge, yes, the defendant did not get up on the stand and say that he had no knowledge. In fact, it would be difficult to prove —

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

Tr. 494-495.

{¶ 33} Robinson's counsel moved for a mistrial, which the trial court denied.

The trial court promptly delivered this curative instruction:

Ladies and gentlemen, the prosecutor made remarks as to the defendant's failure to testify. You are instructed that the defendant has an absolute constitutional right not to testify.

His decision not to do so may not be held against him. You are not to read anything whatsoever into his decision not to testify.

You are to draw no conclusions as to his guilt or innocence by his decision not to testify. You are to disregard the remarks of the prosecutor as to that point.

Is that clearly understood? The jury is indicating that it is.

Tr. 498.

{¶ 34} There is no question that the state improperly referenced Robinson's decision to remain silent during trial. The Ohio Supreme Court stated in *State v. Thompson*, 33 Ohio St.3d 1, 4, 514 N.E.2d 407 (1987), that

[c]omments by prosecutors on the * * * refusal to testify by defendants have always been looked upon with extreme disfavor because they raise an inference of guilt from a defendant's decision to remain silent. In

effect, such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt.

Yet,

even where courts have assumed error from the introduction of a statement regarding a defendant's exercise of the right to remain silent, the admission of such a statement will not automatically be grounds for reversal. [If it] is clear that absent the objectionable testimony, no juror could have entertained a reasonable doubt as to the defendant's guilt because of the relative strength of the other evidence introduced at trial, then the admission of such testimony constitutes harmless error. *State v. Thomas*, 8th Dist. Cuyahoga No. 78570, 2002-Ohio-4026, ¶ 29, citing *State v. Motley*, 21 Ohio App.3d 240, 486 N.E.2d 1259 (10th Dist.1985).

*State v. McMiller*, 8th Dist. Cuyahoga No. 103962, 2016-Ohio-5844, ¶ 46.

{¶ 35} Here, when the assistant prosecuting attorney made her reference to Robinson's silence, defense counsel objected, and the court held a sidebar. After the sidebar, the trial court provided a curative instruction. There is a presumption that a jury follows the court's instructions, including curative instructions. *Treesh*, 90 Ohio St.3d at 480, 739 N.E.2d 749. However, that presumption may be rebutted with a showing that the improper statement could not have been ignored and that serious prejudice likely occurred. *Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), fn. 8.

{¶ 36} Robinson contends that the only evidence introduced at trial to establish the element of knowledge was Robinson's "antsy appearance during his second, prolonged visit to a bank on the same day." Robinson argues that the curative instruction failed to remedy the prejudice caused by the assistant

prosecuting attorney's statement because the evidence showing Robinson's knowledge that the checks were fraudulent was not "overwhelming." *Berryman v. Colbert*, 538 F.2d 1247, 1250 (6th Cir. 1976); *State v. Westwood*, 4th Dist. Athens No. 01CA50, 2002-Ohio-2445, ¶ 43. We neither find Robinson's depiction of the evidence accurate nor do we find his argument compelling.

{¶ 37} "'Overwhelming evidence of guilt' is evidence that clearly demonstrates guilt beyond a reasonable doubt." *State v. Croskey*, 8th Dist. Cuyahoga No. 107772, 2019-Ohio-2444, ¶ 21. The state presented evidence that demonstrated Robinson had three checks from Hungerford's stolen checkbooks. Robinson never performed work for Hungerford, and Hungerford never wrote a check to Robinson yet the checks held by Robinson indicated Hungerford wrote them in payment of Robinson's performance of office repairs. The checks were written from checkbooks stolen less than twenty-four hours prior to Robinson's attempts to cash the checks. Robinson cashed one check and presented the other two checks with the intention of cashing them. We find the evidence showed that Robinson knew the checks were fraudulent and his intent was to cash the checks to his advantage and, therefore, demonstrated Robinson's guilt beyond a reasonable doubt.

{¶ 38} We find that given the curative instruction and the evidence introduced at trial, Robinson has failed to show he suffered any material prejudice by the state's reference to Robinson's choice to remain silent. Consequently, the trial court did not abuse its discretion when it denied Robinson's motion for mistrial.

{¶ 39} We overrule Robinson's second assignment of error.

## III. Exclusion of Codefendant's Convictions

{¶ 40} Robinson argues that the trial court erred when it granted the state's motion in limine to exclude any trial testimony about Genco's convictions. Specifically, Robinson argues that Genco's convictions were important background information from which the jurors could have inferred that Robinson did not know he was passing bad checks that were stolen by Genco. The state argues that introduction of Genco's convictions could have misled the jury to find Genco responsible for the commission of the crimes alleged against Robinson where the facts and law might lead to a different conclusion.

{¶ 41} A trial court has broad discretion when it determines the admissibility of evidence. *State v. Shepherd*, 8th Dist. Cuyahoga No. 81926, 2003-Ohio-3356, ¶ 18, citing *Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, at paragraph two of the syllabus. A trial court's ruling on the admissibility of evidence will not be overturned absent an abuse of discretion. *Shepherd.*

{¶ 42} Further, under Evid.R. 403(A), a trial court may exclude evidence if the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs the evidence's probative value. *Mowery v. Columbus*, 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153, ¶ 64.

{¶ 43} The state charged the codefendants with separate offenses. While neither party mentioned Genco's convictions at trial, Officer Fraticelli testified that the state indicted Genco for breaking and entering into Hungerford's offices and the

theft of Hungerford's checkbooks. Further, Officer Fraticelli testified that her investigation of Robinson did not relate to the breaking and entering and theft of the checkbooks. The charges against Robinson stemmed from forgery and theft charges related to Robinson's presentment of three allegedly fraudulent checks to U.S. Bank and the cashing of one of those checks.

{¶ 44} The trial court determined that absent testimony of Genco's convictions, the jury could still find Robinson guilty of the alleged charges and, therefore, exclusion of Genco's convictions would not create undue prejudice to Robinson. *State v. Hurst*, 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 12. Further, the trial court found introduction of the convictions could mislead the jury: "I believe it might be misleading to the jury and it might very well lead them to find [Genco] entirely responsible for the commission of a crime where the facts and the law might lead to a different conclusion but for their knowledge of the conviction of [Genco]." Tr. 264.

{¶ 45} The trial court did not abuse its discretion when it applied the Evid.R. 403 balancing test and determined the probative value of Genco's convictions may be substantially outweighed by the danger of misleading the jury.

{¶ 46} Defendant's third assignment of error is overruled.

**IV. Prosecutorial Misconduct During Closing Statement**

{¶ 47} At the trial-court level, Robinson did not object to the claimed error raised in his fourth assignment of error. Therefore, review of that claim is limited to plain error. *State v. Frazier*, 8th Dist. Cuyahoga No. 104596, 2017-Ohio-470, ¶ 8,

citing *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001), quoting *State v. Childs*, 14 Ohio St.2d 56, 62, 236 N.E.2d 545 (1968).

{¶ 48} Crim.R. 52(B) states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error only applies where the error affected substantial rights or, in other words, the outcome of the trial would have been different but for the error. *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶ 33, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The defendant must show "a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Appellate courts take notice of plain error only under exceptional circumstances to prevent a manifest miscarriage of justice. *E. Cleveland v. Harris*, 8th Dist. Cuyahoga No. 109404, 2021-Ohio-952, ¶ 20, citing *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1987).

{¶ 49} In closing arguments, as the assistant prosecuting attorney discussed the elements of forgery, she stated Robinson wrote the check in the amount of $505 that he attempted to cash at the West 25th branch. The record is absent of any trial evidence that established Robinson wrote or endorsed that check prior to its presentment at the West 25th Street branch. Therefore, the state erred when it commented that Robinson's handwriting was on the check.

{¶ 50} Robinson's drafting or endorsement of the check was not an element of the offense. R.C. 2913.31(A)(3). The record includes ample evidence from which the jury could find that with purpose to defraud, Robinson delivered to the bank teller the $505 check that he knew to be forged. Thus, we do not find that the assistant prosecuting attorney's erroneous comments affected Robinson's substantial rights and adversely impacted the outcome of the trial.

{¶ 51} Robinson's fourth assignment of error is overruled.

## V. Cumulative Error

{¶ 52} In his final assignment of error, Robinson argues that the cumulative effect of the prejudicial errors rendered his trial unfair.

{¶ 53} Under the doctrine of cumulative error, reversal of a conviction is required when the cumulative effect of errors at trial deprived the defendant of his constitutional right to a fair trial even though each error, individually, did not constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). Yet, the courts find the doctrine of cumulative error inapplicable where the alleged errors are harmless or nonexistent. *State v. El*, 8th Dist. Cuyahoga No. 105089, 2017-Ohio-8165, ¶ 16, quoting *State v. Allen*, 8th Dist. Cuyahoga No. 102385, 2016-Ohio-102, ¶ 53, citing *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

{¶ 54} Because we found no merit to Robinson's first four assignments of error, his fifth assignment of error is overruled.

{¶ 55} For the foregoing reasons, the trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, A.J., and
EMANUELLA D. GROVES, J., CONCUR